**Thomas D. RHODES, III, Petitioner,**

**v.**

**Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent.**

**No. 74-18-Civ-J-S.**

United States District Court,
M. D. Florida,
Jacksonville Division.

June 26, 1974.

Lawrence C. Rolfe, Jacksonville, Fla., for petitioner.

Enoch J. Whitney, Asst. Atty. Gen., Tallahassee, Fla., for respondent.

## ORDER AND WRIT OF HABEAS CORPUS

CHARLES R. SCOTT, District Judge.

Petitioner, an inmate at Union Correctional Institution, Raiford, Florida, seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

Petitioner alleges that the Florida Parole and Probation Commission failed to comply with the minimum procedural due process requirements announced in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S. Ct. 1756, 36 L.Ed.2d 656 (1973), with respect to the revocation of his parole and that he was thereby deprived of his liberty without due process of law. This Court agrees with petitioner for the reasons set forth below. The petition for writ of habeas corpus will therefore be granted and the Commission will be required to provide petitioner with a plenary revocation hearing which complies with Morrissey and Gagnon, supra.

On June 20, 1972, petitioner was granted a parole, the terms of which were to expire June 20, 1974. At the time of his parole petitioner was serving a term of from six months to six years for the crime of robbery.

On June 4, 1973, petitioner was arrested in Tampa, Florida, on a charge of Assault to Murder. He remained in the custody of the Sheriff's Department, Hillsborough County, Florida, under this charge until September 19, 1973, when he pled guilty to the offense of Aggravated Assault. He received a one year suspended sentence with credit for time served.

On June 14, 1973, while petitioner was in custody, a violator's arrest warrant was issued by the Florida Parole and Probation Commission on the grounds that petitioner had violated the terms of his parole. Specifically, the Commission alleged that petitioner had changed his residence without first procuring the consent of his parole supervisor. Notice of the charge against him and of the date of his preliminary hearing was presented to petitioner on July 13, 1973. Before affirming receipt, petitioner requested an explanation of the contents of the notice. He was told that it would be explained to him at the hearing. Petitioner also requested that he be provided a copy of the notice. This request was denied. Accepting his situation, petitioner signed the notice. At no time prior to his preliminary hearing was petitioner apprised of the evidence to be presented against him.

A preliminary hearing was held on July 19, 1973. At this hearing petitioner denied that he had changed his residence without consent. To substantiate his denial, he requested the presence of two witnesses who he claimed could refute the charge. One of these witnesses was petitioner's prior parole supervisor, Mr. Askew, from whom petitioner claimed to have received permission to move. The other was a personal friend of petitioner's who petitioner claimed could verify the consent. Neither witness was provided. Nor was counsel provided after petitioner asserted his indigency and requested the assistance of counsel. No witness testified against petitioner. No evidence of any kind was ever presented against him.

Subsequent to the preliminary hearing, the Commission issued an order, based upon a finding of probable cause, committing petitioner to custody pending a final revocation hearing. No written statement by the Commission as to the evidence substantiating the finding of probable cause was issued. Instead,

the committing order consisted of an order form with the names and dates filled in and stating the conclusion that there is "probable cause and reasonable grounds to believe" that petitioner had violated the conditions of his parole.

Following his conviction on September 19, 1973, for aggravated assault, petitioner was retained in custody under the parole violator's arrest warrant. On October 18, 1973, he was taken to the Reception and Medical Center, Lake Butler, Florida, to await his final revocation hearing. Notice of the date set for his final revocation hearing, which also contained the charges to be considered, was presented to petitioner there on November 5, 1973. The notice showed that petitioner was charged with changing his residence without first procuring the consent of his parole officer and, in addition, charging him with failing to live and remain at liberty without violating the law. The notice contained no disclosure of the evidence intended to be presented against petitioner at the hearing.

A final revocation hearing was attempted on November 13, 1973, but was postponed to accommodate petitoner's request to be heard before a majority of the Commission. A second date was set for the final hearing and notice was presented to petitioner on November 15, 1973. Again, the notice stated charges only; it was devoid of indications of the evidence against petitioner. The final hearing was held at the Reception and Medical Center on December 3, 1973.

In spite of the fact that his conviction of September 19, 1973, was public knowledge, at the final hearing petitioner pled *not guilty* to both charges against him. It was his position that the first charge was unfounded in fact, while as to the second charge there was sufficient mitigating circumstances as to render his return to prison inappropriate. After stating that he felt incompetent to handle the issues in his defense, petitioner renewed his request for appointed counsel. The Commission denied the request claiming that it had

neither the authority nor the funds to provide counsel to indigents. Petitioner proceeded to testify before the Commission on his own behalf, but was unable to present corroborating witnesses. While incarcerated, petitioner has been unable to contact Mr. Askew, and both the Commission and Mr. Estauver, petitioner's new parole supervisor, appear to have been unwilling to aid him in this matter. In addition, because of his unfamiliarity with evidentiary matters, petitioner was unable to present for the Commission's consideration several items of documentary evidence which he claimed would have aided his case. These items were: (1) a letter from petitioner to Mr. Estauver requesting Estauver's aid in arranging the presence of Mr. Askew at the hearing; (2) a letter from Mr. Estauver to the Commission recommending that petitioner's parole not be revoked; and (3) a letter from petitioner's prosecuting attorney on the aggravated assault charge explaining the circumstances surrounding petitioner's plea of guilty. None of these items were received in evidence.

For the Commission's part, no evidence was ever presented against petitioner. While petitioner was informed of his right to confront and cross-examine adverse witnesses, no such witnesses were presented. Indeed, Mr. Estauver, who was the accusing parole official, was not even present at the hearing. Thus the hearing concluded with only petitioner's testimony on record.

On December 6, 1973, the Commission issued its order revoking petitioner's parole and returning him to custody under his original sentence. No written statement by the Commission as to the evidence relief on and the reasons for revoking parole was ever made. Instead, the revoking order was issued on a standard form with the names, dates and charges filled in in the appropriate blanks.

Petitioner contends that the total effect of his parole revocation procedure was to deny him his liberty without due process of law. In Morrissey v.

Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court considered whether due process was owed parolees and, if so, what process was due. The Court determined that a degree of due process was to be afforded parolees before their parole could be revoked and set forth the minimum procedural requirements to be followed to help insure this degree of due process. These procedural requirements include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses except when there is good cause for denying confrontation; (e) a "neutral and detached" hearing body; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. In light of these requirements this Court finds that petitioner was indeed denied due process of law. Specifically, petitioner was denied due process in that the Florida Parole and Probation Commission: (1) failed to disclose to petitioner at any time the evidence against him; (2) effectively denied petitioner the opportunity to present witnesses and documentary evidence by failing to assist petitioner in obtaining the testimony of Mr. Askew; (3) effectively denied petitioner the right to confront and cross-examine adverse witnesses by failing to present witnesses, most particularly Mr. Estauver, the accusing official; and (4) failed to make a written statement as to the evidence relied on and the reasons for revoking petitioner's parole.

Petitioner, also, claims that neither his preliminary hearing nor his final hearing were given promptly. The Court makes no finding on this matter as it is not necessary to the disposition of the case. *See* Cook v. United States, 488 F.2d 667 (5th Cir. 1974).

As an additional ground for relief, petitioner cites the Commission's failure to appoint counsel to aid the pre-

sentation of his case. In Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court held that it is not constitutionally imperative that the states provide counsel for indigents in all parole and probation revocation cases. The Court recognized, however, that there will be cases in which the appointment of counsel will be vital. Whether a particular case is one requiring counsel is to be determined by the parole commission. The decision is to be made "on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system". *Gagnon, supra,* at 790, 93 S.Ct. at 1763. While the Court in *Gagnon* left broad discretion to the state authorities, some guidelines were delineated. Specifically, the Court stated,

> Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. . . . In every case in which a request for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record.

*Gagnon, supra,* at 790–791, 93 S.Ct. at 1764.

In the instant case, petitioner denied that he had changed his residence without permission and claimed that there were sufficiently mitigating circumstances surrounding his conviction for aggravated assault so as to render parole revocation inappropriate. In addition, on every appropriate occasion petitioner repeatedly asserted his indigen-

cy and requested appointed counsel. Further, the nature of petitioner's case, especially such matters as procuring witnesses and documentary evidence and challenging the lack of adverse testimony and evidence, was sufficiently complex as to require the aid of counsel. *Gagnon* mandates that a record be made of the specific reasons why counsel was not appointed in a particular case. No such record, going to the substance of petitioner's request, was made in this case. The Commission asserted that it had neither the authority nor the funds to provide counsel. Neither assertion is legally sufficient, for, if that were the case, *Gagnon* would be rendered nugatory.

Petitioner asserts that the Commission's refusal to appoint counsel for him was not based upon a *Gagnon*-type inquiry but rather on a traditional and reflexive refusal to appoint counsel for probation and parole review cases under any circumstances. The Commission has not refuted this assertion. Regardless of the motivation behind the refusal, however, the Commission was bound by the directives of *Gagnon* at every stage of petitioner's parole review. Therefore, this Court is within its bounds in reviewing the Commission's action. This Court is of the opinion that petitioner's case is such as was within the contemplation of the Supreme Court of the United States in *Gagnon* as one deserving of appointed counsel. Thus, petitioner is entitled to appointed counsel for the purposes of the plenary revocation hearing which the Commission will be required to provide.

In so holding, this Court is not unmindful of the recent decision in Cottle v. Wainwright, 493 F.2d 397 (5th Cir. 1974), holding that the decision as to appointed counsel is to be made first by the state parole authority. In *Cottle*, the Court of Appeals states that "no matter how clear it may appear to the appellate court that it would be error not to provide counsel in the particular case before it, it is not really within our province to make this determination without first permitting the Florida Parole Commission to consider the whole matter of Cottle's parole revocation anew". In *Cottle*, the Parole Commission had never had an opportunity to make a post-*Gagnon* appointment of counsel decision. In this case the preliminary hearing was held a full two months after *Gagnon* had become law. Thus, the Parole Commission had the first opportunity for a *Gagnon*-type inquiry. Whether they made such an inquiry but failed to record it or whether they failed to make it is no longer of consequence. The holding of this Court is the same in either event.

Therefore, it is

Ordered:

1. The petition for writ of habeas corpus is hereby granted.

2. The Florida Parole and Probation Commission is hereby required to provide to petitioner, within 30 days from the date of this order, a plenary parole revocation hearing which complies with the procedural due process requirements set forth in Morrissey v. Brewer and Gagnon v. Scarpelli, *supra*.

3. The Commission shall appoint counsel for petitioner to represent him at said hearing within 10 days from the date of this order.

4. Failure by the Commission to comply with this order within the time limit prescribed and in the manner set forth above shall constitute grounds for an order by this Court to show cause why petitioner should not be permanently released from custody.

5. The United States Marshal for the Middle District of Florida, or his authorized representative, is hereby directed to serve a copy of this order and writ of habeas corpus upon Louie L. Wainwright, Director, Florida Division of Corrections, Farris Bryant Building, Tallahassee, Florida, and upon petitioner Thomas D. Rhodes, III, Union Correctional Institution, Raiford, Florida.

6. The Clerk of this Court is hereby directed to send certified copies of this order and writ of habeas corpus to Ray-

mond E. Howard, Chairman, Florida Parole and Probation Commission, 1117 Thomasville Road, Post Office Box 3168, Tallahasee, Florida, 32203, to Enoch J. Whitney, Esquire, Assistant Attorney General, The Capitol, Tallahassee, Florida, 32304, and to Lawrence C. Rolfe, Esquire, Suite 206, 137 East Forsyth Street, Jacksonville, Florida, 32202.

7. This Court retains jurisdiction of this cause pending written assurances under oath by the Florida Parole and Probation Commission within 45 days from the date of this order that this order has been fully complied with.