David **LAWRENCE**, Petitioner,

v.

Harold J. **SMITH**, Superintendent, Attica Correctional Facility, Edward R. Hammock, Chairman, New York State Board of Parole, Respondents.

**Civ. No. 76–314.**

United States District Court,
W. D. New York.

May 3, 1978.

---

Philip Halpern, Martin Feinrider, Student Atty., Buffalo, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, Albany, N. Y. (Kenneth E. Graber, Asst. Atty. Gen., Buffalo, N. Y., of counsel), for respondents.

CURTIN, Chief Judge.

Petitioner David Lawrence has applied to this court for a writ of habeas corpus, claiming that he is entitled to be released from the custody of the New York State Board of Parole because he was not accorded the due process protections of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) at his final parole revocation hearing that was held on November 6, 1974.

Petitioner was originally sentenced on March 25, 1963, in the Franklin County Court to a term of five to fifteen years based on his conviction for sodomy in the second degree. He was paroled on October 19, 1971, and he remained free on parole until his arrest for parole violations on August 27, 1974. The charges against petitioner were for violations of then-applicable 7 NYCRR § 1.15.[1] A preliminary parole

---

1. The five charges of parole violation were:
   1. In Violation of Rule "7A", the subject failed to lead a law-abiding life and conduct himself as a good citizen, in that he endangered the welfare of a minor, on or about 8/1/74. This minor was a ten-year old male.
   2. In Violation of Rule "7D", the subject's behavior was a menace to the safety of another individual, by tying up a minor and committing sodomy. This act endangered the physical, psychological and moral development of the victim. This minor was a ten-year old male.
   3. In Violation of Rule "7A", the subject failed to lead a law-abiding life and conduct himself as a good citizen in that he endangered the welfare of a minor on or about July 26, 1974. This minor was a 7-year old male.
   4. In Violation of Rule "7D", the subject's behavior was a menace to the safety of another individual, a minor. He committed sodomy on a 7 year old male child, and by so

revocation hearing was held on September 12, 1974, at the Monroe County Jail. The evidence against petitioner consisted of the testimony of his parole officer and the transcribed statements of a seven and a ten-year old boy. At the hearing, petitioner was represented by counsel and he presented a number of witnesses in his own behalf. The hearing officer found probable cause to believe that petitioner had violated the conditions of his release. Following the final parole revocation hearing held on November 6, 1974, at the Attica Correctional Facility, petitioner's parole was revoked and he was returned to prison.

■ Petitioner then filed a petition for writ of habeas corpus in the Wyoming County Court seeking to overturn the parole revocation. This petition was denied by the Honorable Julian A. Hanley in a memorandum and order filed on January 24, 1975. The Appellate Division, Fourth Department, then affirmed this decision. 50 A.D.2d 1073, 376 N.Y.S.2d 61 (4th Dep't 1975). Leave to appeal to the New York State Court of Appeals was denied on February 24, 1976. 38 N.Y.2d 710, 382 N.Y.S.2d 1030, 346 N.E.2d 829. While the Assistant Attorney General argues to the contrary in his brief filed with this court, my review of the record of the state court proceedings indicates that the questions of law which petitioner presented to the New York State courts were sufficiently similar to the claims presented to this court to satisfy the exhaustion requirements of 28 U.S.C. § 2254(b).

On July 16, 1976, petitioner filed a *pro se* application for writ of habeas corpus with this court.[2] Daniel J. Weinstein, Esq., was assigned to represent petitioner in this proceeding on January 20, 1977. However, Mr. Weinstein was then relieved as counsel of record after Mr. Weinstein advised the court that he intended to take a position with the New York State Board of Parole whose Chairman is one of the respondents in this matter.

In the meantime, petitioner was conditionally released from the Attica Correctional Facility to the custody of the Board of Parole on February 15, 1977. However, as a result of the 1974 decision to revoke petitioner's parole, the maximum expiration date of his sentence was extended from April 10, 1978, to May 10, 1978, thus requiring that he spend an additional 30 days in the custody of the Board of Parole. This additional time in custody represents the difference between the date when petitioner was determined to be delinquent, July 26, 1974, and the date that he was taken into custody as a parole violator, which was August 27, 1974.[3]

Philip Halpern, Esq., was appointed to represent petitioner on September 28, 1977, and an amended petition was filed on December 16, 1977. Briefs were subsequently filed by both parties, and oral argument was heard on March 17, 1978.

The primary claim before me is that the Board of Parole failed to accord petitioner certain of the due process protections mandated by *Morrissey v. Brewer* at his final parole revocation hearing. In addition, petitioner claims that New York State Parole Rule "7e", which requires a parolee to advise his parole officer whenever he is questioned or arrested by members of any law

---

doing endangered the physical, psychological and moral development of this individual. 5. In Violation of Rule 7e, the subject failed to advise his parole officer that he was questioned by a member of a law enforcement agency.
Charges 1, 2 and 5 were upheld while charges 3 and 4 were not.

**2.** It is widely recognized that one such as petitioner whose parole has been revoked may challenge the legality of the revocation by means of a petition for writ of habeas corpus. *See Billiteri v. United States Board of Parole,*

541 F.2d 938, 944 (2d Cir. 1976); *Clay v. Henderson,* 524 F.2d 921, 924 (5th Cir. 1975); *Washington v. Hagan,* 287 F.2d 332 (3d Cir. 1960), *cert. denied* 366 U.S. 970, 81 S.Ct. 1934, 6 L.Ed.2d 1259 (1961); *United States ex rel. Cain v. United States Board of Parole,* 349 F.Supp. 1177 (N.D.Ill., E.D.1972), *aff'd,* 486 F.2d 1406 (7th Cir. 1973).

**3.** This calculation appears to be inaccurate since the charges which were upheld related to an incident that allegedly occurred on August 1, 1974, rather than on July 26, 1974.

enforcement agency, is unconstitutionally vague as written and applied.

■ As first recognized in *Morrissey*, the minimum requirements of due process which are applicable to a final parole revocation hearing include: (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. *Morrissey v. Brewer, supra,* 408 U.S. at 489, 92 S.Ct. 2593. There are no allegations that the Board of Parole (hereafter referred to as the "Board") failed to abide by requirements (a), (b), and (e).

Before addressing those requirements of *Morrissey* which petitioner claims the Board of Parole failed to honor, it is appropriate to compare the preliminary revocation hearing with the final revocation hearing that was accorded petitioner. In addition, it is necessary that I resolve the ambiguity, at least for the purposes of this decision, as to the contents of the record before the Board when it revoked petitioner's parole.

At the preliminary hearing petitioner appeared with counsel and presented six witnesses—his employer, a police officer, his wife, and three of his children—to refute the charges which had been brought against him. In addition, petitioner offered extensive testimony in his own behalf. At the final revocation hearing, petitioner appeared alone. Only petitioner and Parole Officer Bruce Babcock testified at the final hearing.

Even a cursory review of the transcripts of the two proceedings reveals which was the more summary of the two. The transcript of the final hearing is only about one-third of the length of the transcript of the preliminary hearing. While the prelim-inary hearing was devoted to receipt of the witnesses' testimony, the final hearing was dominated by the questions, comments, and explanations of the presiding member of the Board. In this instance, it is clear that the Supreme Court's recognition, that "[t]he final hearing is a less summary one [than the preliminary hearing] because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause" (*Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973)), was not heeded by the Board.

Petitioner was entitled to be represented by legal counsel at the final revocation hearing (pursuant to then-applicable 7 NYCRR § 1.19(f) which is now contained in 9 NYCRR § 8025.40), and it is clear that an attorney was present at that hearing to act in .petitioner's behalf. However, for some inexplicable reason, petitioner chose to send his attorney home and to represent himself *pro se* at the hearing. A voluntary and informed waiver appears on the face of the record of the final hearing. This decision to proceed without representation of legal counsel was a most serious error on petitioner's part. A comparison of the preliminary hearing, where petitioner was represented by counsel, and the final hearing clearly demonstrates that "the effectiveness of the rights guaranteed by *Morrissey* may in some circumstances depend on the use of skills which the probationer or parolee is unlikely to possess." *Gagnon v. Scarpelli, supra,* at 786, 93 S.Ct. at 1762. A lawyer's assistance is vital to one facing parole revocation. *See United States ex rel. Bey v. Connecticut State Board of Parole,* 443 F.2d 1079, 1087 (2d Cir.), *vacated as moot,* 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159 (1971).

There remains some dispute as to whether or not all or part of the transcript of the preliminary hearing was before the Board when it rendered its decision after the final hearing. The preliminary hearing transcript which is before me consists of two parts. The first part contains the testimony of Parole Officer Babcock and the prior examinations by Babcock of the seven and

ten-year old boys which were read into the record. This testimony is almost all inculpatory. There is no reporter's certification following this portion of the transcript. Petitioner urges that the Board had before it and relied upon this portion of the preliminary hearing transcript.

The second portion of the preliminary hearing transcript which is before me consists of the testimony of the witnesses which petitioner presented in his own behalf. The reporter's certification following the transcript is dated January 15, 1975, more than two months after the final revocation hearing was held and at least one month after the Board's decision. No one has urged, either here or in the state courts, that this portion of the preliminary hearing transcript was ever considered by the Board. The officer who presided at the preliminary parole violation hearing was not among the officers who participated in the final revocation decision.

■ I am unable to reach the conclusion urged by petitioner that the Board had before it the inculpatory evidence offered at the preliminary hearing. There is no overt reference to any portion of the preliminary hearing transcript in the final revocation hearing minutes nor is there any indication that the minutes were relied on as evidence when parole was finally revoked. Therefore, I must conclude that the record before the Board consisted only of the Report of Violation of Parole, prepared by Parole Officer Babcock and his supervisors, and the transcribed minutes of the final revocation hearing.

■ Petitioner first urges that he was deprived of his due process rights under *Morrissey* when the Board failed to allow him the "opportunity to be heard in person and to present witnesses and documentary evidence" in his own behalf. As the Supreme Court elaborated:

"The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation."

*Morrissey v. Brewer, supra*, 408 U.S., at 488, 92 S.Ct., at 2603. Under the New York regulations that governed final revocation hearings in November, 1974, the member of the board reading the summary of the charges was required to apprise the parolee that "he may produce witnesses on his behalf." 7 NYCRR § 1.19(f) superceded by 9 NYCRR § 8025.50. No such advice was given to the petitioner during the course of the final revocation hearing. It has been recognized in this Circuit that "it would be a fatal violation of due process that the hearing officers departed in material respects from the agency's own regulations." *United States ex rel. Carson v. Taylor*, 403 F.Supp. 747, 754 (S.D.N.Y.1975), aff'd, 540 F.2d 1156 (2d Cir. 1976); *United States ex rel. Donham v. Resor*, 436 F.2d 751, 754 (2d Cir. 1971). The appearance of arbitrariness is enhanced by the fact that the Board did not follow its own administrative regulations in this case. *See Cox v. Benson*, 548 F.2d 186, 189 (7th Cir. 1977).

Even before specific due process guidelines were established in *Morrissey*, the Second Circuit Court of Appeals recognized that a parolee must be permitted to bring to the Parole Board's attention "evidence which would excuse or disprove the charge of parole violation." *United States ex rel. Frederick v. Kenton*, 308 F.2d 258, 259 (2d Cir. 1962). More recently, it has been recognized that in certain circumstances, a Parole Board may have an affirmative obligation to assist a parolee in obtaining and presenting testimony in his own behalf. *See Rhodes v. Wainwright*, 378 F.Supp. 329, 331–32 (M.D.Fla.1974).

It does appear in the record before me that the presiding hearing officer did state to petitioner at the outset:

"I will proceed by reading each charge and I will give you an opportunity to respond. You may admit, deny, stand mute, or explain any mitigating circumstances regarding the charges or all of the charges. You understand that?"

Lawrence: "Yes sir, I do."

Transcript of final revocation hearing at p. 1. After reading charges 1 and 2 together, the hearing officer then received brief testimony from Parole Officer Babcock and entered into the record the statement of the ten-year old boy as it appeared in the Parole Violation Report.[4] The following exchange then took place:

Hearing Officer: Do you wish to respond to that [referring to statement of ten-year old boy]?

Lawrence: Yes, how do you respond, not guilty, I didn't do it.

Hearing Officer: You deny it?

Lawrence: Yes, I deny it.

.    .    .    .    .

Hearing Officer: All right, charge # 3 and # 4, is there anything else you have to say regarding that.

Lawrence: No.

Hearing Officer: Except that you deny it.

Lawrence: Yes.

Transcript of final revocation hearing at p. 2. It was only as an after-thought that the hearing officer asked if petitioner had anything other than an admission or denial which he wished to put on the record in answer to charges 1 and 2.

The hearing officer then read charges 3 and 4, received testimony from the parole officer and entered the statement of the seven-year old boy into the record. The only exchange which took place between the hearing officer and petitioner about these charges follows:

Hearing Officer: All right, is there any response you would like to ____

Lawrence: Yes, to the negative, I did not do it.

Transcript of final revocation hearing at p. 3. Petitioner was not accorded any further opportunity to respond to these charges. Since charges 3 and 4 were not sustained, petitioner cannot claim that he was prejudiced by the hearing officer's failure to allow him to respond to these charges. However, this does further illustrate the

failure of the Board to accord petitioner a meaningful opportunity to rebut the charges against him.

■ At no point during the course of the final revocation hearing did the Board seek an explanation from petitioner or advise him how he might respond, other than that he might admit, deny, or stand mute on the charges. This was not sufficient to comply with the requirement under *Morrissey* that petitioner be accorded the opportunity to be heard in person and to present witnesses and documentary evidence.

■ Petitioner should also have been allowed to present evidence of mitigating circumstances because as the Court of Appeals for the Seventh Circuit has recognized:

"Breach of parole conditions is a necessary but not sufficient ground for parole revocation, for the board is required to determine whether the violator is still a good parole risk, and he may bring extenuating factors to the board's attention."

*Caton v. Smith*, 486 F.2d 733, 735 (7th Cir. 1973). *See also United States ex rel. Sims v. Sielaff*, 563 F.2d 821 (7th Cir. 1977). This rule is designed "to serve both the interest of the parolee in being fully heard before his case is decided, and the interest of society in advancing the cause of rehabilitation by eliminating any reason for reaction to arbitrary decisions." *Preston v. Piggman*, 496 F.2d 270, 274 (6th Cir. 1974).

■ Initially, petitioner acknowledged that he had failed to report to his parole officer that he had been questioned by a police officer. However, after attempting unsuccessfully to explain his reasons to the Board, petitioner chose to stand mute on charge number 5. My review of the record indicates that the Board did not accord petitioner any meaningful opportunity to provide evidence of mitigating circumstances on charge number 5 as mandated by *Morrissey*.

4. There is no explanation why the original or a photo-copy of the original transcript of the statement was not available to be entered into evidence.

■ Petitioner next alleges that he was not allowed to confront and cross-examine adverse witnesses. As the Supreme Court has recognized:

> On request of the parolee, a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence.

*Morrissey v. Brewer, supra*, 408 U.S., at 487, 92 S.Ct., at 2603.

■ The primary evidence relied on by the Board to support its decision to revoke parole was the statement by a ten-year old boy taken by Parole Officer Babcock at the Board's area office in Rochester, New York, prior to the preliminary hearing. A Commissioner of Deeds and the boy's father were also present when the statement was taken. It consisted of six questions and answers and appears at page 2 of the Violation Report. The ten-year old boy was not present at the final revocation hearing. Petitioner did not request that the boy be present for questioning, nor did the hearing officer suggest that the boy could be made available. However, I am not willing to conclude that petitioner waived his right to cross-examine this crucial witness because he failed to make an appropriate request at the hearing. Petitioner was not advised by the Board of his right to confront and cross-examine this witness. Nor is there any indication in the record of a knowing and intelligent waiver of this right to confront and cross-examine an adverse witness, and a waiver will not be presumed from a silent record. *See Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In this instance, "[t]he responsibility rests with the Parole Board to conduct a proper hearing no matter how informal, which meets the basic requirements of due process and which, more specifically, contains those procedures outlined by the Supreme Court in *Morrissey*." *Preston v. Piggman, supra*, at 274. The Board effectively denied petitioner the right to confront and cross-examine this important adverse witness by failing to present him at the final revocation hearing. *See Rhodes v. Wainwright, supra*, at 332.

■ Under *Morrissey*, the right to confront and cross-examine adverse witnesses may be limited when the hearing officer specifically finds good cause for not allowing confrontation. However, in order to come within this exception, "there must be an explicit, specific finding of such good cause, and the reasons should be stated in the record of the revocation hearing." *Baker v. Wainwright*, 527 F.2d 372, 378 (5th Cir. 1976). No such specific finding appears on the record of petitioner's final parole revocation hearing.

At the preliminary revocation hearing, Parole Officer Babcock stated that a physician and a psychologist had advised him that the ten-year old boy should not appear at that hearing as a witness and that the only way which the boy could be questioned was by taking him to Rochester General Hospital to see a child psychologist. Petitioner's attorney failed to pursue this matter, and the hearing officer did not address it on the record of the preliminary hearing. The youthfulness of petitioner's accuser may certainly have served as good cause for not allowing confrontation. However, the Board simply failed to address this issue at the final revocation hearing.

■ In appropriate situations, the Board of Parole may rely on affidavits and depositions and not require live testimony. However, in some cases there is simply no adequate substitute for live testimony. *Gagnon v. Scarpelli, supra*, 411 U.S., at 783, n.5, 93 S.Ct. 1756. *See also State v. Mingua*, 42 Ohio App.2d 35, 327 N.E.2d 791 (1974). Some provision could and should have been made for the Board to receive and explore the crucial testimony of this ten-year old boy. One approach has been suggested by the Second Circuit Court of Appeals:

> The infirmity that we see in the hearing and determination by the parole board is that it resolved the credibility issue solely on the basis of the state report, without itself taking the statements from the informants. Thus the board had no way of knowing how reliable the informants

were and had no real basis on which to resolve the credibility issue against the parolee and conclude that he did in fact violate [a condition] of his parole.

. . . . .

[T]he Board should have received the information directly from the informants (although not necessarily in the presence of the parolee), instead of relying solely on the state report. The board could then have reached its own conclusions about the relative reliability of the informant's statements and those of the parolee and his witnesses.

*Birzon v. King*, 469 F.2d 1241, 1244–45 (2d Cir. 1972).

■ In a related context, this court has recently emphasized the importance of allowing an inmate access to the actual evidence against him rather than merely the summaries which have been prepared by state officials. *See Coralluzzo v. New York State Parole Board*, 420 F.Supp. 592 (W.D. N.Y.1976), aff'd, 566 F.2d 375 (2d Cir. 1977). *See also United States ex rel. Carson v. Taylor*, 540 F.2d 1156 (2d Cir. 1976). The very brief statement of the ten-year old boy which was admitted into the record is disjointed, and, at times, marked by inconsistencies. It was obtained by and at the initiative of one of petitioner's accusers and is little better than the summaries of evidence prepared by state officials which courts of this circuit have found to be inadequate. The only "facts" of illegal conduct on the record are contained in the exchange between Parole Officer Babcock and the ten-year old boy. By relying on this statement, the Board failed to assure that its finding of a parole violation was based on "verified facts" and that the exercise of its discretion was informed by an "accurate knowledge" of the parolee's behavior. *Morrissey v. Brewer, supra*, 408 U.S., at 484, 92 S.Ct. 2593.

■ The Board did not even allow petitioner the opportunity to question the parole officer who prepared the Violation Report and who was the only witness present at the final revocation hearing. A parolee simply must be afforded the opportunity for effective rebuttal of allegations against him. *United States ex rel. Carson v. Taylor*, 540 F.2d 1156, 1161 (2d Cir. 1976). This constitutional requirement was not satisfied by the manner in which the Board of Parole conducted petitioner's final revocation hearing.

*Morrissey* also requires that there be a "written statement by the factfinders as to the evidence relied on and reasons for revoking parole." The decision and the only statement of reasons appears at the end of the final revocation hearing transcript and reads:

"DECISION
PAROLE VIOLATIONS SUSTAINED: CHARGES 1, 2, & 5.
REASON: INFORMATION CONTAINED IN VIOLATION OF PAROLE REPORT AND TESTIMONY OF P. O. BABCOCK.
PAROLE REVOKED: HOLD 18 MONTHS 3/76."

There is no record that petitioner ever received any other statement of reasons. Petitioner has provided the court with a copy of the Parole Board Decision Notice dated November 6, 1974, which reads:

"The Board of Parole at the November 1974 meeting rendered the following decision:

Held 18 months 3/76 Bd.
Parole Violations Sustained—Parole Revoked."

Petitioner has affirmed that this is the only notice of decision which he received other than that which is contained in the final revocation hearing transcript.

While there remains some question as to whether or not petitioner received *any* statement of the evidence relied on and reasons at the time his parole was revoked, petitioner alleges only that the reasons provided by the Board as they appear at the end of the parole revocation hearing transcript are inadequate under *Morrissey*. In its decision, the Board merely reiterated the charges which were sustained and referred to the Parole Violation Report and Parole Officer Babcock's testimony as the evidence relied on to support its decision. However, this evidence constituted the entire record that was before the court. The Board's

reference failed in any way to differentiate among the evidence or to specify which facts were determinative of its decision. The Board also failed to provide any actual reasons to support its decision.

Courts have ruled that a written statement of the evidence, not a mere recitation of the charges, should be provided in order to satisfy the *Morrissey* requirements. *See Baker v. Wainwright,* 527 F.2d 372, 378–379, n.23 (5th Cir. 1976); *King v. Florida Parole and Probation Comm'n,* 306 So.2d 506, 508 (Fla.1975). Courts of this circuit have condemned the use of mere *pro forma* language and routine phrases to satisfy the reasons requirement under *Morrissey. See United States ex rel. Carson v. Taylor,* 403 F.Supp. 747, 756 (S.D.N.Y.1975); *Candarini v. Attorney General of the United States,* 369 F.Supp. 1132, 1137 (E.D.N.Y.1974).

While there are few recent cases in this circuit which have addressed the reasons requirement in the parole revocation context, there is a growing body of case law that does speak to this reasons requirement in the parole release context, and, as the Second Circuit Court of Appeals has recognized:

It is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom.

*United States ex rel. Bey v. Connecticut State Board of Parole, supra,* at 1086.

Beginning with *United States ex rel. Johnson v. Chairman,* 500 F.2d 925 (2d Cir. 1974), the Second Circuit has established that, in order to satisfy fundamental due process requirements, the Board of Parole must provide a statement of reasons which would enable a reviewing body to determine whether parole has been denied for an impermissible reason, or indeed for no reason at all. Such a statement must evince the Board's consideration of all relevant factors. *United States ex rel. Johnson v. Chairman, supra,* at 934; *Haymes v. Regan,* 525 F.2d 540, 544 (2d Cir. 1975). The Board is required to take the further step

of stating the essential facts upon which it relied in reaching its decision. *Coralluzzo v. New York State Parole Board,* 566 F.2d 375, 379 (2d Cir. 1977). As the Second Circuit has recognized:

[P]articularly where an administrative body is vested with such large discretion, a requirement of a statement of reasons and facts is necessary to protect against arbitrary and capricious decisions or actions grounded upon impermissible or erroneous considerations.

*Zurak v. Regan,* 550 F.2d 86, 95 (2d Cir. 1977), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2988, 53 L.Ed.2d 1101. The considerations addressed by the Second Circuit in its parole release decisions are the same as those which apply in the parole revocation context. Certainly provisions which have been held to govern proceedings in which inmates seek their release from incarceration should be equally applicable to those in which parolees seek to maintain their conditional freedom. Because the Board's decision in this case does not isolate and state the "essential facts" upon which it relied, nor does it give the reasons why parole should be revoked rather than some other action taken, I must conclude that this aspect of the Board's procedure was also constitutionally deficient under *Morrissey's* guidelines.

The touchstone of due process is protection of the individual against arbitrary governmental action. *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). A fundamental requirement of due process is the opportunity to be heard in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The procedures followed by the Board of Parole in this instance failed to afford petitioner these constitutional safeguards.

I cannot agree with the New York State Appellate Division that "[r]elator's knowledgeable waiver of counsel at the ultimate revocation hearing forecloses any complaint as to his failure to exercise his hearing rights." *People ex rel. Lawrence v. Smith,* 50 A.D.2d 1073, 376 N.Y.S.2d 61, 62 (4th

Dep't 1975). When the Supreme Court established the due process rights in *Morrissey*, it specifically refused to decide whether or not the parolee was entitled to counsel's assistance at the hearing. It was only later that the Court decided that the right to counsel might be necessary to effectuate the due process rights previously recognized. *See Gagnon v. Scarpelli, supra*, 411 U.S., at 786, 93 S.Ct. 1756.

■ I have already noted that petitioner's failure to proceed with counsel was a most serious strategic error. However, waiver of the right to counsel cannot be construed as a waiver of all of petitioner's other constitutional rights guaranteed under *Morrissey*. There is no basis for assuming from a silent record that petitioner was aware of the *Morrissey* protections and intentionally waived them.

■ Petitioner's waiver of counsel does not relieve the Parole Board of its duty to assure that the parolee is afforded his due process rights. In fact, the Board had an obligation to be more solicitous of petitioner's procedural rights rather than less so.

It is to be hoped that under the recently revised statutory and regulatory scheme[5] that the Board of Parole will henceforth be more careful in cases like this to assure that parolees receive a full and fair hearing marked by the constitutional prerequisites of due process.

Because of the decision which I reach on petitioner's constitutional claims under *Morrissey*, I need not determine whether or not Rule "7e", which requires a parolee to advise his parole officer whenever he is questioned or arrested by law enforcement officers, is unconstitutionally vague. I must note, however, that it is a mystery to me how a parolee could be expected to guess the 24-hour requirement which the Board held to be applicable to petitioner in this case.

■ The usual remedy which this court could give would be to order the Board of Parole to correct the abuses or wrongful conduct within a fixed time. *See Billiteri v. United States Board of Parole, supra*, at 944. However, since petitioner's sentence is due to expire on May 10, 1978, by the Board's calculations, I will order that petitioner be released immediately from the custody of the Board of Parole and the Department of Correctional Services.

So ordered.

---

5. *See* Executive Law § 259 (McKinney's 1977); 9 NYCRR §§ 8001 et seq., filed with the Secretary of State on March 23, 1978.