**Ronald Marcus GHOLSTON, Petitioner-Appellant,**

v.

**Ron JONES, Warden, and the Attorney General of the State of Alabama, Respondents-Appellees.**

No. 86–7575.

United States Court of Appeals, Eleventh Circuit.

July 7, 1988.

---

Jack Hollingsworth, Birmingham, Ala., for petitioner-appellant.

Don Siegelman, Atty. Gen., State of Ala., P. David Bjurberg, Montgomery, Ala., for respondents-appellees.

Before VANCE and EDMONDSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This case involves an appeal from a denial of a petition for a writ of habeas corpus. Because the procedures utilized in revoking the petitioner's parole did not comply with due process, we reverse and remand.

### STATEMENT OF FACTS

Ronald M. Gholston was convicted of murder in an Alabama state court and, on May 23, 1975, was sentenced to life in prison. On January 10, 1983, Gholston was paroled. He remained free on parole until October 2, 1984, when his parole was revoked by the Alabama Board of Pardons and Paroles ("Board").

The incident leading to the parole revocation involved Gholston's arrest on September 13 or 14, 1984 on a charge of second degree criminal mischief. According to a "Report of Parole Violation" completed by Gholston's parole officer, Gholston admitted to the officer that he had broken several windows in his cousin's home. The report also indicated that approximately one month earlier Gholston had been "depressed" when he reported to the parole officer and that Gholston previously had been examined by a psychiatrist, but that the parole officer "ha[d] no idea as to what

the diagnosis was of [Gholston's] mental condition."

On the date of his arrest Gholston waived his right to a preliminary hearing. He also signed a form indicating that he had received notice that the pending criminal charge might constitute a violation of a parole condition that Gholston "not violate any law." Although the criminal charge later was dismissed for lack of evidence to submit to the grand jury, Gholston's parole officer ordered Gholston arrested for violating the terms of his parole. Gholston was returned to prison on September 28, 1984.

Five days later, on October 2, 1984, prison officials brought Gholston before a member of the Board. At that time Gholston received a "Notice of Parole Violation Charges" that listed as the only offense Gholston's arrest on the charge of second degree criminal mischief. The form also contained a notation that the criminal charge had been dismissed. Gholston indicated on the notice that he would have neither an attorney nor witnesses present at the hearing and "waive[d] the seven (7) days notice by the Board for [his] attorney or witnesses to appear in [his] behalf." The hearing commenced immediately thereafter and Gholston pled not guilty to the parole violation.

The record does not indicate what else, if anything, transpired during the hearing. Subsequently, however, the Board completed a form entitled "Parole Court Action" revoking Gholston's parole. The form contains a column headed "Reasons for Revocation." Handwritten thereunder is the notation "Preponderance of evidence." The form contains a second column headed "Basis." Preprinted under this heading are seven items: New Criminal Conviction; Violation Report; Preliminary (On-Site) Hearing Report; Parolee's Testimony; Other Witnesses' Testimony; Pending Criminal Charges; and Other. Lines to the left of "Violation Report" and "Other" are marked with a check, and to the right of "Other" is the handwritten notation "mental condition." No other information appears on the form. Shortly thereafter

Gholston received a separate form entitled "Notice of Revocation" detailing that his parole had been revoked based on his arrest for second degree criminal mischief.

On November 15, 1985, Gholston filed a petition for a writ of habeas corpus in the federal district court, claiming that the Board revoked his parole without due process of law. The district court adopted a Magistrate's recommendation that the petition be denied. From that decision Gholston appeals.

## DISCUSSION

■ In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court provided the starting point for analyzing the constitutionality of parole revocation proceedings. According to the Court, "the minimum requirements of due process" include:

(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489, 92 S.Ct. at 2604. Gholston claims on appeal that the Alabama parole authorities failed to comply with several of the *Morrissey* requirements. According to Gholston, he did not receive adequate written notice of the claimed violation before the hearing, he was not told of or allowed to confront the evidence against him, and he did not receive a written statement of the evidence relied upon and reasons for revoking his parole. We believe that under the unique facts of this case the Board's actions in revoking Gholston's parole violated the confrontation right enunciated in *Morrissey.*

Of primary importance in this appeal is the "Report of Parole Violation" completed by Gholston's parole officer. The State concedes that this report was the only evidence adduced against Gholston to support the parole revocation charge of failing to "not violate any law." This unsworn document purportedly recounts Gholston's confession to the underlying criminal offense for which he was charged. According to the parole officer's report, "On 9–14–84 I interviewed Gholston in the Franklin County Jail.... He admitted having broken out the windows in his cousin's home." (R–10 Attachment 2).

Although the only offense listed in the report is Gholston's violation of the law prohibiting criminal mischief, the document also discusses Gholston's mental condition. According to the parole officer, approximately one month earlier Gholston had been "depressed" when he reported to the official. The parole officer made an appointment for Gholston to visit a local mental health center. Gholston "kept the appointment" and eventually was prescribed medication. The report also states, however, that the parole officer "ha[d] no idea as to what the diagnosis was of [Gholston's] mental condition." (R–10 Attachment 2). The record is silent as to whether this report was disclosed to Gholston prior to the final revocation hearing. By Gholston's own admission, the Board told him during the hearing that his "parole supervisor had sent the Board a letter stating that in [the parole officer's] opinion [Gholston] was guilty of the charge." (R–16). It appears, however, that this revelation occurred *after* Gholston had waived his right to have witnesses and an attorney appear in his behalf. The record also does not indicate whether Gholston was provided with a copy of the report, whether Gholston asked to be able to question the absent parole officer, whether Gholston objected to the use of the unsworn document, or whether Gholston was told of the contents of the report, including Gholston's purported admission to the underlying

criminal offense and the discussion of Gholston's mental condition.

As noted earlier, *Morrissey* guarantees to the parolee the right to confront adverse witnesses (absent a specific finding of good cause for precluding confrontation) and the right to have disclosed the evidence against him. *Morrissey*, 408 U.S. at 489, 92 S.Ct. at 2604. The purpose of these rights is to help "assure that the finding of a parole violation will be based on *verified* facts and that the [parole board's] exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id.* at 484, 92 S.Ct. at 2602 (emphasis added). Although a parole board may "consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial," *id.* at 489, 92 S.Ct. at 2604, in some cases "a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in [the parolee's] presence," *id.* at 487, 92 S.Ct. at 2603.

Several courts have considered the use of documentary evidence in place of live testimony at revocation hearings.[1] In *Prellwitz v. Berg*, 578 F.2d 190 (7th Cir.1978), the Seventh Circuit authorized the use of a probation officer's report in lieu of live testimony. Rejecting the petitioner's confrontation claim, the court concluded that the report, made in the ordinary course of the officer's work, contained "recognized indicia of reliability." *Id.* at 192. To the contrary, however, the use of unsworn documents not disclosed to the petitioner may violate the confrontation right. *See United States ex rel. Sims v. Sielaff*, 563 F.2d 821, 823 n. 4 (7th Cir.1977). In addition, the court in *Lawrence v. Smith*, 451 F.Supp. 179, 187 (W.D.N.Y.1978), deemed the testimony of one witness important enough that reliance on a written statement alone violated a parolee's right of confrontation, even though the parolee did not request that the witness be present at the hearing. According to the court:

---

1. The requirements of due process are the same for probation and parole revocation hearings.

*See Baker v. Wainwright,* 527 F.2d 372, 376 n. 13 (5th Cir.1976).

The primary evidence relied on by the Board to support its decision to revoke parole was the statement by a ten-year old boy taken by Parole Officer Babcock.... The ten-year old boy was not present for questioning, nor did the hearing officer suggest that the boy could be made available. However, I am not willing to conclude that petitioner waived his right to cross-examine this crucial witness because he failed to make an appropriate request at the hearing. Petitioner was not advised by the Board of his right to confront and cross-examine this witness. Nor is there any indication in the record of a knowing and intelligent waiver of this right to confront and cross-examine an adverse witness, and a waiver will not be presumed from a silent record.

*Id.*

*Lawrence* differs from this case because here the complaining witness is the parole officer rather than a third party and the purported statement came from Gholston himself. However, the violation report is unsworn and we have no indication whether its contents ever were disclosed to Gholston. We also note that the underlying criminal offense against Gholston was dismissed for *lack of evidence to take to the grand jury*. While this in itself cannot prevent the revocation of parole, *see, e.g., Mack v. McCune*, 551 F.2d 251, 254 (10th Cir.1977), it does make the testimony of the parole officer as to Gholston's alleged admission more important.

■ Equally as important, the Board apparently relied on the unsworn report's discussion of Gholston's mental condition as a factor in its decision to revoke parole. Initially, we do not understand the relevance of Gholston's mental condition to the

claimed parole violation. Gholston was charged with having failed to "not violate any law." Being "depressed" and on medication appears to have little relevance to a finding that Gholston violated parole by committing the crime of second degree criminal mischief. Thus, the Board erred when it considered Gholston's mental condition in evaluating the sole charge against him. In addition, a violation report may lose its "recognized indicia of reliability" when it discusses a subject such as someone's mental condition. There is no reason to presume that a parole officer is competent to make determinations as to the mental health of an individual nor is there any reason to believe that he does so in the ordinary course of his work. In fact, in the same paragraph in which the parole officer wrote that Gholston had been "depressed," he also indicated that he "ha[d] no idea as to what the diagnosis was of [Gholston's] mental condition." We cannot conclude that this unsworn, unverified information would aid the Board's attempt to obtain "accurate knowledge of the parolee's behavior." *Morrissey*, 408 U.S. at 484, 92 S.Ct. at 2602.

■ The troubling aspect of this case is that Gholston has not alleged that he requested the parole officer's presence or access to the "letter" alluded to by the Board. Language in *Morrissey* appears to indicate that, at least with respect to the preliminary hearing, a parolee must *request* that an adverse witness testify in person.[2] See *Morrissey*, 408 U.S. at 487, 92 S.Ct. at 2603. However, under the facts of this case, we agree with the *Lawrence* court and will not presume from a silent record that Gholston waived his right of confrontation.[3] *See also United States ex*

---

2. *Morrissey* also states, however, that the *final* hearing "must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Morrissey*, 408 U.S. at 488, 92 S.Ct. at 2603.

3. In *Baker v. Wainwright*, 527 F.2d 372, 378 (5th Cir.1976), the Florida Parole Commission did not allow a parolee to cross-examine a witness whose "testimony was critical on the issue" of

whether the parolee committed the claimed offense. The parolee there, rather than requesting to examine the witness, may actually have attempted to waive his confrontation right, stating at one point "I won't cross[-]examine her then." *Id.* at 375 n. 10. Notwithstanding the parolee's remark, this court's predecessor held that "[d]ue process required that [the parolee] be permitted to cross-examine the [witness]." *Id.* at 378.

*rel. Carson v. Taylor,* 540 F.2d 1156, 1161 (2d Cir.1976) (government required to produce the "best evidence" absent a specific showing of good cause by the hearing examiner). Outside of the violation report, there apparently was little or no evidence that linked Gholston to the claimed offense. The violation report was unsworn and discussed Gholston's mental condition in conjunction with the charge or failing to "not violate any law." Additionally, there is no indication that the parole officer was competent to adjudge Gholston's mental health or that Gholston knew of the contents of the officer's report. Finally, the record is silent as to whether Gholston was informed of his right to confront adverse witnesses and it appears that he was not told of the parole officer's "letter" until after he had waived his right to counsel and to present witnesses. While none of these facts in and of itself would necessarily constitute a violation of the right of confrontation, when taken together they lead to the conclusion that the parole revocation hearing was constitutionally deficient.[4]

We therefore REVERSE the judgment of the district court and REMAND with instructions that the court grant the writ unless the State of Alabama provides the petitioner with a parole revocation hearing that comports with due process.

EDMONDSON, Circuit Judge, dissenting:

Petitioner, a convicted murderer, has failed to convince me that Alabama—in revoking petitioner's parole—violated the federal constitution so as to justify a federal court's interference.[1]

Today's opinion stresses that the record is silent[2] about much that occurred at the state hearing on the revocation of petitioner's parole. I regard that silence as no basis for habeas corpus relief and decline to give petitioner any benefit of assumptions based on silence. To warrant habeas relief, petitioner must show that the state violated his federal rights;[3] it is not (and ought not to be) enough that the state had the opportunity to violate his rights and that the record is silent about what happened.

As early as September 14, 1984, petitioner was notified that an effort would be made to revoke his parole because he had violated a law: criminal mischief. Then on October 2, 1984, prior to Gholston's parole revocation hearing, petitioner was given a "Notice of Parole Violation Charges" stat-

---

4. In light of this determination, we decline to reach Gholston's other claims.

1. The burden is on [the petitioner] 'to allege and provide primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings, that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused.' *Darr v. Burford,* 339 U.S. 200, 218, 70 S.Ct. 587, 597, 94 L.Ed. 761 (1950), *overruled on other grounds, Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

   In this habeas corpus proceeding, [the petitioner] must prove his right to relief by a preponderance of the evidence. It is not the state's responsibility to provide that [petitioner] received the proper warnings; it is [the petitioner's] responsibility to prove that he did not.

   *Alvord v. Wainwright,* 731 F.2d 1486 (11th Cir. 1984) (per curiam).

2. That the absence of a transcript or recording of the revocation hearing violated due process has not been argued to us.

3. *See United States v. Handy,* 351 U.S. 454, 462, 76 S.Ct. 965, 970, 100 L.Ed. 1331 (1956) ("While this Court stands ready to correct violations of constitutional rights, it also holds that *it is not* asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained *not as a matter of speculation but as a demonstrable reality.*") (emphasis added); *Henson v. Estelle,* 641 F.2d 250, 253 (5th Cir. March, Unit A 1981) ("State court convictions regular in form and valid on their face may not be so lightly set aside. The burden on the state habeas applicant is that his factual applications shall have appropriate evidentiary support. Convicts in state prisons, incarcerated under a state court conviction, valid on its face, *may not be set free on assumptions.*") (emphasis added); *see also Dais v. State ex rel. Davis,* 420 So.2d 278 (Ala.Civ. App.1982) ("We cannot assume error; the burden is on the appellant to show error in the record. [cite] An appellate court cannot presume the existence of facts as to which the record is silent and make it the grounds for reversal.").

ing that he breached Condition Seven of his parole agreement: "not to violate any law." This document showed that Gholston had been arrested for second-degree criminal mischief but that the charge had been dismissed. On the same form, Gholston expressly waived his right to seven days notice, to have an attorney represent him, and to call witnesses to testify on his behalf.

After signing the form, a revocation hearing was held during which Gholston plead not guilty to the underlying charge of second-degree criminal mischief. During this hearing, according to Gholston, the Board told him that his "parole supervisor had sent the Board a letter stating that in [the supervisor's] opinion [Gholston] was guilty of the charge." This report was based upon a personal conversation with Gholston immediately after his arrest during which Gholston admitted committing the crime. The record is silent about when at the hearing Gholston was told of or shown his parole supervisor's report. The record is also silent about whether Gholston ever objected to anything, claimed surprise, or requested the parole supervisor's appearance, requested access to the letter alluded to by the Board or testified on his own behalf at the hearing; but Gholston has never contended that he did these things.[4]

In view of these facts, I believe that Gholston's right to confrontation was unbreached. He appears to have received everything to which he was entitled. As *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), instructs, a revocation hearing must be provided, *"if it is desired by the parolee*, prior to the final decision on revocation by the parole authority." *Id.* at 487, 92 S.Ct. at 2603 (emphasis added). This hearing is to "lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Id.* at 488, 92 S.Ct. at 2603. But the point is that the revocation hearing discussed in *Morrissey* is mandated by the constitution only to the extent that the parolee requests a hearing.

The conditional nature of a parole revocation hearing strongly suggests that unless a parolee requests an opportunity to confront an adverse witness, the confrontation requirements of *Morrissey* are not implicated.[5] Put differently, Alabama was under no constitutional obligation to produce the parole officer upon whose report the Board's decision to revoke Gholston's parole was based absent some request by Gholston to do so or, at least, an objection to the officer's absence.[6] Because Gholston does not contend that he ever requested an opportunity to dispute his parole

---

4. In the absence of either a request or an objection, the officer conducting the hearing was unwarned of potential defects in the hearing. Generally, I oppose policies that allow a person to be silent in a state proceeding and then to make a federal case out of state conduct that might well have been different if the presiding officer in the state hearing had simply been told there was a potential problem. I recognize that Gholston was acting pro se at the revocation hearing, but it is undisputed that he waived counsel. Also, he has never contended that, when the Board mentioned the letter, he then requested a lawyer or requested more time to prepare a response to the letter.

   Gholston had no right to be informed, in advance of the hearing, of the evidence against him. *See Baker v. Wainwright*, 527 F.2d 372, 378 n. 23 (5th Cir.1976) ("*Morrissey* does not require disclosure to the parolee in writing of the evidence to be used against him."); *see also Stidham v. Wyrick*, 567 F.2d 836, 838 (8th Cir. 1977) (no requirement to provide parolee with copies of evidence to be against him prior to

hearing); *Commonwealth v. Quinlan*, 251 Pa. Super. 428, 380 A.2d 854 (1977) (same); *State v. Turnbull*, 114 Ariz. 289, 560 P.2d 807 (Ct.App. 1977) (same).

5. *Baker v. Wainwright*, 527 F.2d 372 (5th Cir. 1976), is, in my view, not a case in which a parolee attempted to waive cross-examination. Instead, the parolee was told "there will be no point in [his] questioning" the witness: cross-examination was unpermitted.

6. Even had Gholston requested and then been denied the opportunity to confront his parole supervisor, it is unclear that such a denial would violate due process. *See Stidham v. Wyrick*, 567 F.2d 836, 838 (8th Cir.1977) (no due process violation where parolee's request to call parole officers who prepared his parole violation report that was considered in revocation proceeding was denied). Because Gholston made no such request, it is unnecessary to address this question.

supervisor's report and that such a request was denied, today's holding is an unwarranted extension of the protections established by *Morrissey*. More important, today's opinion contradicts *Morrissey's* warning that parole revocation procedures should be simple, flexible, and informal. *Id.* at 489, 92 S.Ct. at 2604; *see also United States v. Miller*, 514 F.2d 41, 43 (9th Cir. 1975) (parole revocation hearing is not to be "equated with a criminal prosecution").

In determining that Gholston's due process rights were violated, today's court concludes that the significance of the supervisor's report should be discounted because the report was "unsworn" and "unverified" and because it discussed Gholston's mental condition.

I do not believe that the supervisor's report is as infirm as today's court suggests. Although *Morrissey* states that the "finding of a parole violation will be based on verified facts," *id.* 408 U.S. at 484, 92 S.Ct. at 2602, the opinion goes on to say that a parole board may "consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* at 489, 92 S.Ct. at 2604. Therefore, when the Supreme Court said a parole should be revoked on the basis of "verified" facts, I think "verified" was used in its ordinary sense, that is to say, facts confirmed or established by a hearing, and not in the more technical sense in which the word connotes statements made under oath. *See Miller*, 514 F.2d at 43 (admission of hearsay statement from probation officer and of unauthenticated copies of state court criminal records did not deny due process). A parolee's due process rights are satisfied where unsworn evidence, such as this supervisor's report, is considered by a parole board so long as the proffered evidence bears substantial evidence of reliability. *See generally Egerstaffer v. Israel*, 726 F.2d 1231, 1234–35 (7th Cir.1984); *Prellwitz v. Berg*, 578 F.2d 190 (7th Cir.1978).

The supervisor's report is reliable for at least two reasons. First, the report contains an admission by Gholston that he violated the terms of his parole. Although

evidence allowed at revocation hearings is unlimited by the Federal Rules of Evidence, it is significant that those Rules allow admissions into evidence at trials. *See* Fed.Rule Evid. 801(d)(2). Second, the report was submitted in compliance with a statutory obligation pursuant to Ala.Code sec. 15–22–73 (1975) ("Each parole officer shall make such reports as the board may require...."). *See generally McCormick on Evidence* sec. 315 (3d ed. 1984) (exception for public records and reports); *United States v. Pattman*, 535 F.2d 1062, 1063–64 (8th Cir.1976) (because there was evidence of the report's reliability, hearsay police report was properly admitted during probation revocation hearing even though arresting officer was not called to testify). These features provide the necessary guarantee of trustworthiness to permit consideration of the report.

I share the concern that the supervisor's report discussed Gholston's mental condition when nothing in the record indicates that the supervisor was qualified to do so. Still, merely because evidence irrelevant to whether Gholston violated the conditions of the parole was considered together with other evidence that Gholston did violate his parole, I am unwilling to say that revocation of Gholston's parole violated due process. *See generally Frick v. Quinlin*, 631 F.2d 37 (5th Cir.1980) (affirming parole revocation decision even though evidence that had been expunged from parolee's record was considered, where other evidence supported revocation). The final notice to Gholston from the parole commission notifying him formally that his parole was revoked relied upon a single ground for the revocation: his violation of a state law.

I would affirm the judgment of the district court.