**William E. BAKER, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, Respondent-Appellee.**

No. 74–4232.

United States Court of Appeals, Fifth Circuit.

Feb. 23, 1976.

Theodore Klein, Miami, Fla. (Court-appointed), for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Frank B. Kessler, Paul Zacks, Asst. Attys. Gen., West Palm Beach, Fla., for respondent-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

Appellant Baker petitioned below for a writ of habeas corpus[1] challenging the validity of Florida's revocation procedures utilized to revoke his parole. The district court found that Baker had exhausted his state remedies, but, after an evidentiary hearing, entered an order dismissing the petition. We have determined that the procedures employed by Florida authorities to revoke appellant's parole contravened both the letter and spirit of *Morrissey v. Brewer*, 408 U.S.

---

1. The petition was filed pursuant to the general habeas corpus statute applicable to state custody, 28 U.S.C. § 2254 (1970).

471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).[2] We reverse and remand.

In 1971 appellant Baker was convicted of robbery in a Florida circuit court and was sentenced to 20 years. He was paroled in September, 1972 but on November 11, 1972 he was arrested and jailed in St. Lucie County, Florida on a charge of assault with intent to commit rape.[3] The victim was one Ethel Arnold who was with a Harold Bell at the time of the alleged assault. Appellant allegedly fought with and attempted to restrain Bell while another man, codefendant Shaw, attempted to rape Ethel Arnold.

On November 15, 1972 Baker was notified in writing that the state parole commission would conduct a hearing on November 20 at the St. Lucie County jail "in the matter of your arrest for a felony charge and your conduct on parole . . . to determine what action the Commission shall take thereon." The written notice also informed Baker of his right to counsel and of his right to present witnesses in his behalf. The district court, after its evidentiary hearing, concluded that at the time this written notice was delivered Baker was afforded verbal notice of the nature of the charge against him and the procedures to be followed at the hearing.[4] The district court did not find, however, that appellant was informed at this time of the evidence against him.

Commissioner Cross of the Florida parole commission arrived at the St. Lucie jail on November 21, 1972 for the hearing.[5] The proceedings were tape recorded, but neither a court reporter nor a secretary was present. After the hearing was convened Commissioner Cross informed Baker that he had a choice with respect to the manner of proceeding. Baker could waive a hearing before a majority of the parole board, in which event Commissioner Cross would conduct the hearing alone and make a report which would be the basis of the decision whether to revoke his parole. If Baker chose this option, he would remain in the St. Lucie County jail pending the ultimate determination by the board majority. Alternatively, Baker could choose not to waive a hearing before a majority of the commission, in which event, the Commissioner made it quite clear,[6] he would issue a warrant to have Baker sent to the state penitentiary pending the hearing before the commission and its rendition of a decision. Not surprisingly, Baker chose the first option.

At the revocation hearing Baker remonstrated that he desired the assistance of an attorney who had been retained for him, but Commissioner Cross

---

**2.** In *Morrissey* the Supreme Court held that the "minimum requirements of due process" for parole revocation proceedings include:

(a) written notice of the claimed violations of parole; (b) *disclosure* to the parolee *of evidence* against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the *right to confront and cross-examine* adverse witnesses (*unless* the hearing officer specifically finds good cause for not allowing confrontation); (e) a "*neutral and detached*" hearing *body* such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a *written statement* by the factfinders *as to the evidence relied on* and reasons for revoking parole.

408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499 (emphasis added).

**3.** This charge was nolle prossed by the state in January, 1973. Appellant and his codefendant Shaw were again charged with assault with intent to commit rape in February, 1973 but

---

this charge likewise was nolle prossed in March, 1973. Apparently both charges related to the same incident. Supp. Brief for Appellant at 3.

**4.** Mr. McCormack, the parole officer who delivered the notice to Baker, testified at one point that he had "more or less" advised Baker of his right to counsel and the charges against him. At other points, however, McCormack testified unequivocally that he informed Baker of the charge of assault with intent to commit rape. We have concluded, therefore, that the district court's finding that Baker was afforded verbal notice of the specific felony charge is supported by substantial evidence and is not clearly erroneous.

**5.** There is no explanation as to why the hearing was held on the twenty-first rather than the twentieth of November.

**6.** Commissioner Cross informed Baker of the alternatives at the outset of the hearing, prior to hearing any testimony or receiving any evidence.

refused to delay the hearing until counsel's arrival and made no attempt at that time to reach Baker's purported attorney personally or by telephone. The Commissioner premised this action on the fact that parole authorities had twice contacted the attorney named by Baker by telephone, on November 16 and 20, and the attorney had disavowed any knowledge of Baker or his case.[7] In its order denying habeas relief, the district court concluded that Baker had not been denied the right to counsel at the revocation proceeding.[8]

At the revocation hearing a law enforcement officer testified about Baker's arrest and the lineup at which Bell had identified him as the assailant. After Baker had cross-examined the officer, Harold Bell was called to testify. The transcript reflects that the hearing tape ran out on side one during Bell's testimony and that the recording began again on side two "with some testimony missing." Substantially all of Bell's pertinent testimony on direct examination is missing; only Baker's cross-examination of him is contained in the transcript. The cross-examination tends to show that Bell and appellant scuffled while another man dragged Ethel Arnold down the beach. Baker made some effort to impeach Bell's account, but Commissioner Cross evidently was dissatisfied with Baker's questioning and terminated the cross-examination without asking Baker whether he had finished.[9]

At the conclusion of Bell's testimony, Ethel Arnold was called to the stand by the Commissioner. She testified only that on the night in question one or two black males attempted to rape her. Baker was not permitted to cross examine her.[10] Baker then testified that he had been innocently proceeding along the beach when Bell accosted him, a fracas occurred, he and Bell proceeded down the beach and discovered Arnold and then Bell "emptied his pistol" at Baker as Baker ran away. Subsequent-

---

7. A subsequent letter from the attorney to the commission indicated that a family member had indeed attempted to retain him for Baker and had paid him $20. Apparently an intra-office administrative error had caused the attorney to deny that he represented Baker.

8. The district court made specific findings and came to specific conclusions on only the *appointed* counsel issue. There were no statements on the *retained* counsel issue, apparently because of the conclusion that this issue was not before the court. In his *pro se* habeas petition Baker clearly claims a denial of *retained* counsel, however, and we reject the state's contention that this issue was not before the court.

9. The transcript indicates that appellant did in fact wish to further cross-examine Bell, but the Commissioner terminated the questioning:

> Baker: . . . All I want [Bell] to do is tell the truth what happened on the beach, and he partially did.
> Cross: He's already testified to that.
> Baker: Partially.
> Cross: Okay. All right. Mr. Bell, thank you and, ah . . . Okay, Ms. Arnold.
> Baker: Uh, can I say something Mr. Cross? If I ask the witness something and you don't think it's proper, you can stop me right, and then we could proceed on with the hearing.

Ethel Arnold was then called as a witness. Record, Vol. I at 123.

10. After the testimony quoted in note 9, the following transpired:

> Cross: The next witness will testify that a fracas occurred. That's all she'll testify to, and there'll be no point in questioning.
> Baker: I won't cross examine her then.
> Cross: Sit down, ah, for the record, will you state your name please.
> Arnold: Ethel Arnold.
> Cross: Ah, Ms. Arnold, will you raise your right hand please. Do you solemnly swear that the testimony you are about to give in this cause will be the truth and nothing but the truth, so help you God?
> Arnold: Yes sir.
> Cross: On the night of November 11, 1972, Uh, you were parked on the beach in St. Lucie County with Mr. Bell, is that true?
> Arnold: Yes, sir.
> Cross: Was on that night an attempt made, uh, to uh, on the part of a colored male or two colored males to rape you?
> Arnold: Yes sir.
> Cross: That'll be all.
> Baker: Mr. Cross, Mr. Cross.
> Cross: Hum?
> Baker: The only thing I didn't like about that part . . . (Off the record exchange)

At this point Baker's testimony begins. Record, Vol. I at 123.

ly, Baker claimed, he was arrested for traffic violations and was made to participate in an unfair lineup. He claimed he was charged with assault with intent to commit rape because he persisted in denying that anyone had been riding in the car with him. He also attempted to repudiate the law enforcement officer's testimony and identification. The revocation hearing ended with Commissioner Cross noting that Baker "did not agree to proceed with the hearing without an attorney" and the transcript closes with certification by Mr. Cross that the transcription was a "reasonably true and correct" reflection of the hearing. At the habeas hearing the court admitted the transcript into evidence, holding that its incompleteness went to its weight, not its admissibility.[11]

Before this court Baker premises his plea for relief on eight different allegations of error. We have concluded that several of his contentions are meritorious. We do not rest our decision on any one of his allegations, but upon the totality of the circumstances revealed by the record. It is our firm conclusion that Baker's right to procedural due process was violated in the revocation proceeding when it is measured by the standards set out in *Morrissey*.[12]

 The record establishes that Baker was denied the assistance of counsel that he had *in fact* previously retained. In these circumstances such a denial constitutes a violation of procedural due process. The district court made a conscientious effort to resolve the right to counsel question in a fair manner, but that court committed error because of a failure to focus on the precise issue presented here.

 In *Morrissey* the Supreme Court specifically left open . "the - question whether the parolee[13] is entitled to the assistance of retained counsel or to appointed counsel if he is indigent."[14] Subsequently, in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Court held that states were not constitutionally obligated to furnish appointed counsel in all revocation cases. The *Gagnon* Court laid down general guidelines to be utilized by the courts in determining whether counsel should be appointed,[15] but reserved the question

---

11. Record, Vol. II at 23.

12. Pursuant to Florida procedure, Baker's parole was formally revoked by a majority vote of the commission, that majority acting on the basis of the written report of Commissioner Cross. Unfortunately, that report, which supposedly functioned as an accurate reflection of the evidence adduced at the revocation hearing, was not made a part of the record, although memoranda related to it are a part of the record.

Baker asserts that evidence relied on by the parole commission was incorrect in that Commissioner Cross *reported* that Ethel Arnold had identified him when in fact she had not. The state contends that this argument was not presented to the district court as a ground for issuing the writ, and that we should not consider it on appeal. Alternatively, the state asserts that, even if this argument is considered on the merits, the Commissioner's mistake was harmless. In light of the confusion in the · record, in addition to the fact that we cannot say for certain that this contention was adequately presented to the district court, we pretermit treatment of Baker's argument on this point.

13. For purposes of due process, probation and parole revocation hearings are equivalent. *Gagnon v. Scarpelli*, 411 U.S. 778, 778 & nn. 3–5, 93 S.Ct. 1756, 1762 & nn. 3–5, 36 L.Ed.2d 656, 661–62 & nn. 3–5 (1973).

14. 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499 (citation omitted).

15. Said the Court:

Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself. In every case in which a re-

"whether a probationer or parolee has a right to be represented at a revocation hearing by retained counsel in situations other than those where the State would be obliged to furnish counsel for an indigent." [16]

*Morrissey,* but not *Gagnon,* was applicable to Baker's November, 1972 parole revocation.[17] Nevertheless, the district court by dicta indicated that even had *Gagnon* applied to Baker's revocation, the proceedings were not violative of it. In light of appellant's clearly colorable claim of innocence, this conclusion is not supported by the record. Since *Gagnon* is prospective only, however, we do not rest our decision on its holding.

[redacted] It is axiomatic that the question of what is mandated by due process requirements turns on the particular circumstances of the case and a balancing of the governmental and private interests involved. *See, e.g., Wolff v. McDonnell,* 418 U.S. at 560, 94 S.Ct. at 2976, 41 L.Ed.2d at 943; *Morrissey v. Brewer,* 408 U.S. at 481, 92 S.Ct. at 2600, 33 L.Ed.2d at 484. This general principle clearly applies in the circumstances revealed by the record before us where the specific issue is whether a person whose liberty is at stake is entitled to the assistance of previously retained counsel when considered with other pertinent factors related to the hearing afforded Baker. *E.g., Sarzen v. Gaughan,* 489 F.2d 1076, 1083 (1st Cir. 1973); *Ganz v. Bensinger,* 480 F.2d 88, 89 (7th Cir. 1973).

In this case we are not presented with the question whether retained counsel is a due process right in every revocation proceeding.[18] Rather, we are faced with a situation where a parolee presented both a colorable claim that he had not committed the offense upon which the revocation proceeding was based and a reasonable, *bona fide* claim that he had previously retained counsel whose presence he desired. In such circumstances the parolee's interest in retaining his conditional liberty far outweighs the state's interests in a speedy determination, economy and a nonadversary hearing. Since Baker had retained his own counsel, the state treasury was not affected. The hearing was adversarial in nature from the outset. In our judgment the chief valid state interest, a speedy determination of the revocation issue, must yield to other pertinent considerations.

[redacted] The state contends that appellant effectively waived his right to retained counsel,[19] but the record contradicts this contention. Commissioner Cross unequivocally stated at the conclusion of the hearing that Baker did not agree to proceed without his attorney. Nor were the actions of Baker and the parole officials sufficient to establish an implied waiver of the assistance of retained counsel. Florida officials contacted the

quest for counsel at a preliminary or final hearing is refused, the grounds for refusal should be stated succinctly in the record. 411 U.S. at 790–91, 93 S.Ct. at 1764, 36 L.Ed.2d at 666–67.

16. 411 U.S. at 783 n.6, 93 S.Ct. at 1760 n.6, 36 L.Ed.2d at 662 n.6.

17. The recent case of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), indicates that *Morrissey* and *Gagnon* are to be accorded prospective effect only. *See Van Blaricom v. Forscht,* 511 F.2d 615, 618 (5th Cir. 1975) ("If these be dicta, they are dicta from on high, and we are not inclined to disregard their counsel.") *Morrissey* was decided in June of 1972, but *Gagnon* was not handed down until May of 1973.

18. Such a ruling might raise equal protection issues, *cf. Cottle v. Wainwright,* 477 F.2d 269 (5th Cir.), *vacated,* 414 U.S. 895, 94 S.Ct. 221, 38 L.Ed.2d 138 (1973), *on remand,* 493 F.2d 397 (5th Cir. 1974). There is, however, precedent for such a rule in the *civil* area. *See Goldberg v. Kelly,* 397 U.S. 254, 270–71, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287, 300–01 (1970) ("We do not say that counsel must be provided at the [welfare] pre-termination hearing, but only that the recipient must be allowed to retain an attorney if he so desires.")

19. At the time the hearing was conducted the state itself accorded parolees a statutory right to retained counsel. Fla.Stat. § 947.23(1) (1967).

attorney the day before the hearing, but not on the day of the hearing. Baker was not permitted to contact the attorney on the day of the hearing. Due process required greater efforts on the part of the parole officials to determine whether in fact Baker had retained counsel. Since the state was at least partially at fault in denying Baker the services of his counsel, the standard for establishing a knowing and intelligent waiver of that right is extremely high.[20] That standard has not been met here and we have concluded that Baker did not waive his due process right to the presence of previously retained counsel as earlier indicated.

■ Baker also asserts that he was denied due process in that he was not permitted to cross-examine Ethel Arnold. We find this argument meritorious and reject the contentions of the state that (1) Arnold's testimony did not incriminate Baker, rendering the denial of cross-examination harmless, and (2) Cross' subsequent statement that Arnold's emotional state justified the disallowance was a satisfactory finding under *Morrissey*.

Contending that the error, if any, in denying cross-examination was harmless, the state asserts that Arnold's testimony was unnecessary to Baker's revocation because Bell's testimony incriminated Baker.[21] We disagree. Arnold was the victim of the alleged assault, which was the basis of the revocation. Bell's testimony deserved consideration, but Arnold's testimony was critical on the issue of the alleged assault with intent to rape. Due process required that Baker be permitted to cross-examine the alleged victim of the assault.

■ The state's position that *Morrissey* was complied with in that at the habeas hearing Commissioner Cross testified that cross-examination of Arnold was disallowed because of her "very hysterical state of mind" is equally devoid of merit. The *Morrissey* exception to the right of confrontation and cross-examination applies to cases where "the hearing officer specifically finds good cause for not allowing confrontation."[22] In order to come within the exception there must be an explicit, specific finding of such good cause, and the reasons should be stated in the record of the revocation hearing. Here we have an after-the-fact, potentially self-serving, conclusory statement concerning Ethel Arnold's emotional state. This "subsequent finding" simply did not comport with the *Morrissey* exception.

■■ Although Baker asserts several other arguments that may contain some merit,[23] we deal only with two others.

20. *See United States v. Ross,* 503 F.2d 940, 945 (5th Cir. 1974).

21. This reasoning concerning the important right of cross-examination is somewhat incongruous in light of the facts that: (1) none of Bell's substantive direct testimony was preserved and (2) Commissioner Cross, in his memorandum regarding the revocation, characterized as "noteworthy" Arnold's purported identification of Baker as "the man who took part in the attempted rape." **Record, Vol. I** at 14.

22. *See* note 2 *supra*.

23. Baker contends that the admission into evidence of the transcript of the revocation hearing was violative of due process because that record was so incomplete. Such determinations of admissibility lie within the trial court's sound discretion and will not be disturbed unless abuse of that discretion is shown, *see, e. g., United States v. Carson,* 464 F.2d 424, 437

(2d Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972); *United States v. Avila,* 443 F.2d 792 (5th Cir.), *cert. denied,* 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258 (1971).

Baker also asserts that the notice of the revocation hearing was insufficient in that the charges, the names of the witnesses, and the evidence against him should have been given in writing. The written notice informed Baker that the parole violation entailed the commission of a felony. *Morrissey* does not require disclosure to the parolee in writing of the evidence to be used against him. Nevertheless, in light of the possibility of confusion and contradiction, written notice of the evidence and the specific violations is desirable. Florida itself has held that its relevant statutes require such notice in revocation proceedings occurring subsequent to the *Morrissey* decision. *See Dees v. State,* 295 So.2d 296 (Fla.1974).

Baker further asserts that the written statement furnished him by the commission of the

We have determined that the one hearing afforded Baker did not comply with the due process mandate of *Morrissey.*

■ The state strenuously contends that *Morrissey* requires both a preliminary and a final hearing only in the extremely limited circumstances where there is either a substantial time lag between the arrest and the eventual revocation or the parolee is arrested at a place distant from the state institution to which he may be returned. While the Court in *Morrissey* did emphasize these factors, 408 U.S. at 484, 92 S.Ct. at 2601, 33 L.Ed.2d at 496, certainly that case's mandate is not limited to such narrow circumstances. *See, e.g., Gagnon v. Scarpelli, supra* (no substantial time lag).[24]

■ Here, Baker was arrested and incarcerated. The circumstances of his arrest and incarceration are substantially equivalent to an arrest at a point distant from the state institution to which he would be returned as stated in *Morrissey.* In substance Baker was denied a probable cause hearing in that Commissioner Cross presented him with a Hobson's choice. The Commissioner informed Baker that he was entitled to a probable cause hearing at St. Lucie County—but he also made it clear that such a hearing would be a mere formali-

ty because he *was* going to find probable cause.[25] Moreover, Commissioner Cross wrote the admittedly inaccurate report upon which the whole commission relied in formally revoking the parole, and he was a member of that body. In view of the fact that the Commissioner had reached the conclusion that probable cause existed at the commencement of the hearing, the procedure followed here did not comply with *Morrissey.*[26] Baker was never accorded any hearing before a "neutral and detached" hearing body.[27]

In brief summary and conclusion, it is our opinion that the *totality of circumstances* surrounding Baker's parole revocation violated both the letter and spirit of *Morrissey v. Brewer* and his right to due process. *See Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). For the above reasons, the district court's order dismissing Baker's habeas petition is reversed and the case is remanded with direction that the writ be granted if the state of Florida should fail or refuse, within a reasonable time, to conduct parole revocation proceedings not inconsistent with this opinion. *See, e.g., Newman v. Wainwright,* 464 F.2d 615 (5th Cir. 1972) (per curiam).

Reversed and remanded with directions.

evidence relied on and reasons for revoking his parole was insufficient. This statement said that "[Baker] was arrested . . . on a felony charge of Assault WITC Rape . . . Violated Condition 8 failing to live and remain at liberty without violating the law in that . . . he did unlawfully participate in the Attempted Rape of Ethel Arnold." Arguably this statement provides the reasons for the revocation, but it does not provide an account of the evidence relied on. The Florida courts have ruled that a written statement of the evidence, not a mere recitation of the charges, should be provided in order to satisfy *Morrissey. See King v. Florida Parole and Probation Comm'n,* 306 So.2d 506, 508 (Fla.1975). The Supreme Court has also held, subsequent to the time frame relevant here, that *Morrissey* requires that the parolee receive such a written report. *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656, 664 (1973).

**24.** This case does not present one of the extremely narrow situations that do not require

a preliminary hearing. *See United States v. Langford,* 369 F.Supp. 1107 (N.D.Ill.1973) (since no arrest or incarceration, preliminary hearing not required).

**25.** Had Baker chosen the dual hearing alternative, the result of the hearing before Commissioner Cross was preordained. *See* note 6 *supra* and accompanying text.

**26.** As in *United States v. Foster,* 500 F.2d 1241, 1244–45 & n. 2 (9th Cir. 1974), the Commissioner's approach to the hearing, " 'hardly reflected the restraints of conventional judicial demeanor' " (citation omitted).

**27.** The procedure employed by the state also did not comply with that which we approved in *Van Blaricom v. Forscht,* 511 F.2d 615 (5th Cir. 1975), wherein one commission member conducted a neutral and fair probable cause hearing and subsequently participated in the ultimate decision whether to revoke.