Revised April 20, 1999

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-11116

_____


EARLANDO WILLIAMS,

                              Petitioner-Appellant,

                    versus

GARY L. JOHNSON, Director, Texas Department
of Criminal Justice, Institutional Division,

                              Respondent-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Texas
_____
March 29, 1999
Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

Earlando Williams appeals the district court's denial of his petition for a writ of habeas corpus.  Williams claims that the State's failure to produce his parole officer at his revocation hearing violated his due process right to elicit favorable testimony regarding circumstances that would have mitigated his violation of a parole condition.  Pretermitting a determination of a due process violation, we find that any error was harmless and therefore affirm.

I.

In 1966 a jury found Williams guilty of rape and sentenced him to death.  That sentence was subsequently commuted to life imprisonment.

The Texas Department of Criminal Justice Board of Pardons and Paroles Division granted Williams a parole release in 1991.  While on parole, Williams requested permission to move to California.[1]  Claiming that he feared for his life after he was assaulted and had his home burglarized, Williams moved to California before his parole officer acted upon his request to leave Texas.

Upon arriving in California, Williams contacted his parole officer and provided her with his address and telephone number.  On two other occasions, Williams had telephone conversations with the officer.  Williams then moved from his initial residence in California but failed to contact his parole officer or provide her with his updated address and telephone number.  Williams was subsequently arrested for absconding.

At his parole revocation hearing, Williams did not contest that he had violated a condition of his parole.  He admitted that he had left the State of Texas without written permission but argued that his fear for his life mitigated the violation.

Although Williams requested in a pre-hearing letter that his parole officer attend the revocation hearing to be examined and

---

[1]A condition of Williams's parole release was that he obtain written permission from his parole officer prior to leaving the State of Texas.

cross-examined, the parole officer was not present to testify. Instead, she submitted an affidavit declaring that she had not given Williams written permission to leave the State of Texas or to go to California. The affidavit was silent with respect to any factors that might have mitigated Williams's unauthorized move. Williams objected to the introduction of the affidavit on the ground that it denied him the right to confront and cross-examine the parole officer. The revocation hearing officer overruled the objection and accepted the affidavit, finding good cause to deny the confrontation and cross-examination based on an agency policy that does not require a supervising officer to travel outside his or her district parole office area to attend a parole revocation hearing.

After the hearing, the Texas Board of Pardons and Paroles ("Parole Board"), following the hearing officer's recommendation, revoked Williams's parole. The administrative release hearing report included the hearing officer's findings, which delineated Williams's violation and noted Williams's testimony that he had traveled to California without written permission because he could not stay in Texas for safety reasons. The findings further indicated that Williams's parole officer had told him that he needed to pay supervision fees amounting to $120.00 before he could receive travel permission and that Williams eventually had forwarded payment of these fees to his parole officer. Finally, the hearing officer noted in her report:

3

[Williams's] parole officer indicated that she was not certain RELEASEE could be transferred to California, however, [sic] RELEASEE gave her his address and phone number in California and spoke to her approximately three times by phone from California. RELEASEE was never given a written travel permit or permission to go to California.

Based on these findings, the hearing officer concluded that Williams had violated a rule governing his administrative release status.

Williams challenged the parole revocation by filing in state court an application for a writ of habeas corpus. The Texas Court of Criminal Appeals denied the application without written order, based on the findings and conclusions of the state trial court, which had rejected Williams's claim.

Williams filed the instant petition in federal court on or about April 15, 1997. The magistrate judge to whom the petition was initially referred noted that the Parole Board's decision was based at least in part on Williams's own admission that he had moved to California without authorization. According to the magistrate, there was no basis to conclude that the Board's decision would have been any different if Williams's parole officer had been present at the revocation hearing. In addition, the magistrate noted that the state court had reviewed the record and found that Williams had failed to establish a due process violation. Quoting from our decision in *Moore v. Johnson*, 101 F.3d 1069, 1076 (5th Cir. 1996), the magistrate judge stated that he was

4

unable to conclude that "the state court decision [is] so clearly incorrect that it would not be debatable among reasonable jurists." The magistrate therefore recommended the denial of Williams's habeas petition.

Williams filed written objections to the magistrate's findings and recommendation. The district court adopted the findings and conclusions of the magistrate judge and entered judgment denying the application for a writ of habeas corpus. Williams filed a timely notice of appeal and this court granted a certificate of appealability with respect to the question whether a parolee's right to present mitigation evidence encompasses the right of confrontation when the parolee has admitted the violation for which parole is revoked and, if so, whether Williams was denied that right.

Because Williams filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996), that Act's provisions govern the disposition of this appeal. *See Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059 (1997). Accordingly, we may not grant relief with respect to any claim that was adjudicated on the merits in a state court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

5

the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[2]

## II.

The seminal case regarding the due process rights of a parolee facing revocation is *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593 (1972). In *Morrissey*, the Supreme Court held that a parolee is entitled to an opportunity for a hearing prior to a final revocation decision. That hearing must provide a basis for the evaluation of contested material facts and a determination whether the factual findings suggest the propriety of revocation. At the hearing, a "parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Id.* at 488, 92 S. Ct. at 2603. The requirement that a parolee be able to address both the violation and mitigative factors accords with the Court's recognition that a revocation decision involves two questions---first, whether the parolee contravened a condition of his parole, and second, whether the parolee should be recommitted to prison.

The first step is relatively simple; the second is more

---

[2]In addressing Williams's claim, we are bound by § 2254(d)(1) because that section sets forth the standard of review for pure questions of law and for mixed questions of law and fact. *See, e.g.*, *Trevino v. Johnson*, -- F.3d --, 1999 WL 79738, at *8 (5th Cir. Feb. 19, 1999); *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998); *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996). Williams's claim does not hinge on a question of fact, in which case our review would be governed by 28 U.S.C. § 2254(d)(2). *See Drinkard*, 97 F.3d at 767.

complex. The second question involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts. This part of the decision . . . depends on facts, and therefore it is important for the board to know not only that some violation was committed but also to know accurately how many and how serious the violations were. Yet this second step, deciding what to do about the violation once it is identified, is not purely factual but is also predictive and discretionary.

*Id.* at 479-80, 92 S. Ct. at 2599-600. Unless there is a determination that the parolee in fact violated a parole condition, the discretionary aspect of the revocation inquiry need not be reached. *See id.* at 483-84, 92 S. Ct. at 2601.

Although the Court noted that a parolee is not due the full panoply of rights that apply in a criminal prosecution, it identified the minimum requirements of due process in this context. A revocation procedure must provide (1) written notice of the violations charged, (2) disclosure to the parolee of the evidence against him, (3) the opportunity to be heard in person and to present witnesses and documentary evidence, (4) the right to confront and cross-examine adverse witnesses unless the hearing officer finds good cause for disallowing such confrontation, (5) a neutral and detached hearing body, and (6) a written statement by the factfinders identifying the evidence and reasons supporting the revocation decision. *See id.* at 489, 92 S. Ct. at 2604.

At issue here is whether Williams, having admitted his violation of a parole condition, was nonetheless entitled to have

his parole officer present at the hearing for direct or cross-examination.[3]  A parolee who requests a revocation hearing and contests the charged violation has a qualified right to confront and cross-examine adverse witnesses.  *See, e.g.*, *id.; McBride v. Johnson*, 118 F.3d 432 (5th Cir. 1997) (finding a due process violation where hearsay evidence regarding the violation was the sole evidentiary basis for revocation); *Farrish v. Mississippi State Parole Bd.*, 836 F.2d 969, 978 (5th Cir. 1988) (concluding that the admission of hearsay statements deprived the parolee of "his right to confront the adverse witness whose information provided the basis for parole revocation in a situation where his interest in exercising that right was paramount").[4]  We must here ascertain whether the Supreme Court intended *Morrissey*'s minimum due process protections to apply at both the violation and the mitigation stages of the revocation hearing or only to the question whether the parolee breached a condition of his parole.

---

[3]Although styled as a denial of the right of confrontation, Williams's claim more closely approximates a due process argument based on the denial of his right to present his own case--that is, to call a witness who would testify about mitigative circumstances that might suggest that the violation did not warrant revocation. This distinction, however, does not affect our resolution of Williams's appeal.

[4]We explained in *United States v. Grandlund*, 71 F.3d 507(5th Cir. 1996), that confrontation of a particular witness may be disallowed upon a finding of good cause, which requires the weighing of the defendant's interest in confronting the witness with the government's interest in denying that right.  The indicia of reliability of the challenged evidence is an important factor in this balancing test.  *See id.* at 510.

8

In *United States v. Holland*, 850 F.2d 1048 (5th Cir. 1988), we

stated:

> When it is determined that a person charged with a probation violation admits the violation charged, the procedural safeguards announced in *Morrissey v. Brewer* are unnecessary.  However, even a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation.
> ...
>
> Contrary to the government's contentions, a probationer's admission that he violated the terms of probation does not entitle him to less due process than a probationer who contests the asserted violations.  Even a probationer who admits the allegations against him must be given an opportunity to "explain away the accusation" and to offer mitigating evidence suggesting that the violation doesn't warrant revocation.

*Id.* at 1050-51 (citations omitted).[5]  We think it clear from this

passage and from the Supreme Court's decision in *Morrissey* that a

parolee's admission of a violation does not eviscerate the due

process protections otherwise accorded him.  Although the Court

---

[5]With respect to the first sentence of the passage quoted from *Holland*, we reiterate that there is no right to present mitigation evidence where an admitted violation requires revocation.  *See Pickens v. Butler*, 814 F.2d 237, 239 (5th Cir. 1987) ("[I]t is only where the factfinder has discretion to continue parole that the parolee is entitled to show an excuse for the violation or that revocation is not appropriate.").  And, once the violation is admitted, certain of the *Morrissey* due process requirements become far less relevant.  Where a violation supports, but does not mandate, revocation, however, this first sentence must be read in the full context of *Holland* and cannot be interpreted as an absolute bar to any attempt to demonstrate mitigative factors.  At most, *Holland*'s statement may mean that a parolee could be required to make a greater showing of his interest in procuring the testimony he seeks.  Any other reading would disregard *Holland*'s fuller explanation of the due process rights of a parolee in the context of mitigation.

distinguished the question whether the parolee violated a condition from the question whether that violation warranted revocation, it viewed the revocation hearing as properly addressing both inquiries. *See Morrissey*, 408 U.S. at 484, 92 S. Ct. at 2602 ("What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior."); *cf. Black v. Romano*, 471 U.S. 606, 612, 105 S. Ct. 2254, 2258 (1985) (noting that, where there is discretion to continue probation or parole, "the parolee or probationer is entitled to an opportunity to show not only that he did not violate the conditions, but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition"). In identifying the minimum due process requirements for a revocation hearing, the Court did not suggest that we adhere to those requirements at the violation stage and simply discard them at the mitigation stage.

From this, it is clear that *Morrissey* (and *Holland*) intended that a parolee, even one who has admitted the violation of a parole condition, has a qualified right to confront and cross-examine witnesses and present evidence in support of mitigation. We caution, however, that this interpretation does not transform the revocation hearing into a full-scale trial. *See Morrissey*, 408 U.S. at 489, 92 S. Ct. at 2604. A hearing body may still determine

10

that good cause exists to disallow the confrontation of a particular witness and may bar the presentation of testimonial and documentary evidence not relevant or material to the violation or mitigative factors.

In this case, the respondent suggests that there was no invasion of Williams's right to present evidence on his own behalf because he failed to subpoena the parole officer. As an initial matter, we find the respondent's reliance on the lack of a subpoena to be disingenuous. Williams made clear in his pre-hearing letter that he wanted his parole officer to be present for examination and he objected to the introduction of her affidavit on the ground that it denied him his right to confront and cross-examine the officer. Under the circumstances, these measures sufficed to invoke his due process rights.[6] *See McBride v. Johnson*, 118 F.3d 432, 438-39 (5th

---

[6]We note that Williams received a notice of his rights in the revocation process, which included the right

> [t]o be heard on the alleged violation(s). You may have witnesses appear on your behalf, present letters, affidavits, and statements supporting your claims or defenses. You may examine and confront persons giving adverse information unless the Hearing Officer finds good cause for not allowing such to occur. You may request that subpoenas be issued for witnesses.

In his letter to the Hearing Section of the Parole Board, Williams requested the appointment of counsel, in part, so that he would be afforded all his rights "such as subpoenaing [the parole officer] and her files so that they may be examined and cross examined." In light of this communication, Williams cannot be faulted for not having secured a subpoena, particularly after be was informed that he could *request* that subpoenas be issued for witnesses. Moreover, we are reluctant to hinge the right of confrontation on the existence of a subpoena where the witness sought for testimony is

11

Cir. 1997) (finding that a parolee adequately invoked his right to confront the witness, notwithstanding his failure to object to hearsay testimony, where the parolee had clearly expressed his intent to have the alleged victim be present during the revocation proceedings).

The respondent also asserts that Williams suffered no denial of his right of confrontation and cross-examination. In support of this proposition, the respondent notes that Williams did not dispute the accuracy of the parole officer's affidavit regarding the violation and that the hearing officer found good cause to deny confrontation based on the agency policy of not requiring parole officers to travel outside their district area to attend a revocation hearing. We are not persuaded that there was sufficient good cause to deny Williams's right to have his parole officer appear as a witness at the revocation hearing. The record indicates that the hearing officer allowed the introduction of the affidavit over objection solely on the ground that agency policy does not require a supervising officer to travel outside her district office area. Although we have recognized the government's interest in avoiding the significant effort and expenditure that may be required to secure certain witnesses, *see United States v. McCormick*, 54 F.3d 214, 225 (5th Cir. 1995); *United States v.*

---

the state-employed parole officer and a pre-hearing request is made for her attendance.

12

*Kindred*, 918 F.2d 485, 487 n.1 (5th Cir. 1990),[7] we have never suggested that conservation of the public fisc will in every instance trump a parolee's interest in examining witnesses. A finding of good cause requires the weighing of the respective interests of the parolee and the government. The record provides no evidence that the hearing officer made any particularized inquiry. We cannot sanction a finding of good cause based on the mere recitation of a blanket agency policy without any assessment of the strength of the parolee's competing interest in examining the witness.[8] The failure to evince any regard for the parolee's

_____

[7]The respondent's reliance on *Kindred* and *McCormick* is misplaced. Those cases, as well as *United States v. Grandlund*, 71 F.3d 507 (5th Cir. 1995), involved revocations based on lab reports that detected the use of a controlled substance. We found that the government's interest in avoiding the significant expense of procuring the testimony of lab employees outweighed the parolee's interest in confrontation and cross-examination, particularly in light of the circumstances and the indicia of reliability of the hearsay at issue in those cases. Williams's interest in confrontation was arguably stronger than the interests pressed in *Kindred*, *McCormick*, and *Grandlund*. More importantly, Williams's complaint, as the respondent recognizes, focuses more on the infringement upon his right to present mitigation evidence than on his inability to challenge the reliability of the parole officer's factual assertions. Thus, the cases cited by the respondent do not speak directly to the type of due process deprivation claimed here.

[8]In a given case, the government's interest in avoiding the expense associated with the parole officer's attendance may very well outweigh the parolee's interest in her presence at the hearing. We do not suggest that a parolee is entitled to the testimony of his parole officer; we hold only that a parolee has a right to elicit such testimony where a pre-hearing request is made for the witness's presence, the evidence sought bears directly on the violation or mitigation, and the State's interests do not rise to the level of good cause to deny the request.

13

identified need for a witness's testimony is particularly troubling in a case such as this one, where the mitigating evidence sought to be elicited is so closely tied to the violation itself. In this case, Williams's parole officer might have testified that she found Williams's fear to be credible and that she had indicated that he would be able to remain in California if he paid certain fees. It is certainly conceivable that a hearing body might have found such testimony to be persuasive and to mitigate Williams's violation.

The lack of a particularized finding of good cause, in combination with Williams's interest in having the parole officer testify, could well lead us to conclude that a violation of Williams's due process rights occurred. That said, we acknowledge that this is a close case. Williams did not seek to impeach the factual assertions made in the parole officer's affidavit. Instead, he sought her testimony to bolster his own assertion that he had been justified in fleeing Texas and that the officer had represented that she would secure written authorization for his move if he paid certain fees. Under these circumstances, the hearing officer might have found that the State's interest in conserving resources outweighed Williams's interest in the parole officer's testimony because that testimony would have been cumulative and Williams's own explanation was not challenged.

In this case, however, we need not delve further into the question of error. We may not grant habeas relief unless the error at issue "'had substantial and injurious effect or influence in

14

determining'" the proceeding's outcome.[9] *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 1714 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *accord Calderon v. Coleman*, -- U.S. --, 119 S. Ct. 500, 503 (1998) (*per curiam*); *California v. Roy*, 519 U.S. 2, 5, 117 S. Ct. 337, 338 (1996); *Harris v. Warden, Louisiana State Penitentiary*, 152 F.3d 430, 437 (5th Cir. 1998); *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996). On the record before us, we cannot conclude that the State's failure to produce Williams's parole officer as a hearing witness contributed to the revocation decision. *See Woods*, 75 F.3d at 1026 ("[U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict."). The hearing officer acknowledged Williams's explanation for his violation, and there is no indication that she questioned his credibility. It appears instead that, notwithstanding Williams's justification for leaving Texas without authorization, the Parole Board found the violation sufficient to support revocation. We therefore cannot say that the absence of the testimony sought by Williams substantially affected or

---

[9]Both the Supreme Court and this court have likened this harmless-error standard to a requirement that the error have resulted in actual prejudice. *See Calderon v. Coleman*, -- U.S. --, 119 S. Ct. 500, 503 (1998) (*per curiam*); *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996).

15

influenced the Parole Board's decision.[10]  Because any error resulting from Williams's inability to have the parole officer testify was harmless, we affirm the district court's denial of the petition for a writ of habeas corpus.

AFFIRMED

---

[10]The only discrepancy between the hearing officer's findings and Williams's claim is that the former indicated that the parole officer was uncertain whether authorization for the move could be obtained while Williams asserted that the officer had promised that he would receive authorization if he paid the fees he owed.  This difference, however, relates not to the reason why Williams violated a parole condition in the first instance, but instead to why he may have remained in California.  Even if the parole officer would have admitted that she made any promise to provide authorization after Williams left Texas, we are not convinced that such testimony would have affected the outcome here, given the obvious emphasis placed on the violation by both the hearing officer and the Parole Board.