UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50180

_____

ROBERT THOMAS BARNES,

Petitioner-Appellee,

v.

GARY L. JOHNSON, Director, Texas Department of
Criminal Justice, Institutional Division,

Respondent-Appellant.

_____

**Appeal from the United States District Court
for the Western District of Texas**
_____

**August 6, 1999**

Before WIENER and PARKER, Circuit Judges, and LAKE, District
Judge.[*]

LAKE, District Judge:

The Director of the Texas Department of Criminal Justice
appeals from the Final Judgment of the district court conditionally
granting a writ of habeas corpus to a state prisoner whom the court
concluded had been denied the right of confrontation at a parole
revocation hearing. For the reasons explained below we **REVERSE** the
judgment of the district court and **VACATE** the writ.

**I.  Facts and Procedural History**

_____

[*]District Judge of the Southern District of Texas, sitting by
designation.

In 1984 Robert Thomas Barnes pled guilty to one count of aggravated sexual assault of a child and was sentenced to twenty-five years in prison. Barnes was released from prison on mandatory supervision in November of 1993. In August of 1995 the State of Texas moved to revoke Barnes's parole after Debra Odom accused Barnes of sexually assaulting her. Barnes denied the allegation and counsel was appointed to represent him. A hearing officer of the Texas Board of Pardons and Paroles conducted a preliminary hearing on September 22, 1995, and a revocation hearing on November 9, 1995.

Odom suffers from Downs Syndrome. Although at the time of the revocation hearing Odom was 34 years old, the hearing officer found that she had the mental age of a six- or seven-year-old child. The hearing officer found that Odom was a fearful witness and that good cause thus existed to remove Barnes from the room during Odom's testimony. The hearing officer allowed Barnes's counsel to cross-examine Odom, to ask for continuances to speak with Barnes outside of the hearing room, and to replay Odom's tape-recorded testimony for Barnes. At the conclusion of the hearing the hearing officer found that Barnes had sexually assaulted Odom in February of 1995 and recommended that his parole be revoked. On December 1, 1995, the State revoked Barnes's parole release.

After the state courts denied Barnes's application for writ of habeas corpus,[1] Barnes sought habeas relief in federal district court raising seven grounds for relief:

    (1)   violation of the Sixth Amendment's Confrontation Clause,

    (2)   ineffective assistance of counsel,

    (3)   denial of his right to present medical records,

    (4)   denial of the opportunity to present witnesses,

    (5)   denial of his right to a neutral and detached hearing body,

    (6)   denial of equal protection of the laws in pursuing the parole violation against him, and

    (7)   denial of due process at the revocation hearing.

The State moved for summary judgment. The magistrate judge recommended that the district court deny the State's motion for summary judgment and grant Barnes a writ of habeas corpus on the Confrontation Clause claim. The district court independently reviewed the record and also considered audio tapes of the parole revocation hearing that had not been filed when the magistrate judge made his recommendation. The district court accepted the

---

[1]On June 24, 1996, Barnes filed an application for writ of habeas corpus in the state courts alleging inter alia a violation of the Sixth Amendment's Confrontation Clause. Finding that Barnes had filed previous applications for habeas corpus challenging his conviction, which had been denied, the state trial court recommended that Barnes's application be denied and that the Texas Court of Criminal Appeals cite Barnes for abuse of the writ. Order at 1-2, Ex Parte Barnes, No. 11,657-07, 66-67 (Tex. Crim. App. Aug. 28, 1996). On August 28, 1996, the Texas Court of Criminal Appeals denied Barnes's application "without written order." Id. at cover. The district court concluded that no deference to the state court findings or conclusions was required because there were no findings or conclusions to defer to.

magistrate judge's recommendation and granted a conditional writ of habeas corpus, ordering the State either to release Barnes or to provide him with a new revocation hearing within thirty days.[2] This court granted the State's motion for a stay pending appeal.

## II.  **Analysis**

This court reviews <u>de novo</u> constitutional challenges concerning the right to confront adverse witnesses.  <u>United States v. Grandlund</u>, 71 F.3d 507, 509 (5th Cir. 1995).

In <u>Morrissey v. Brewer</u>, 92 S. Ct. 2593 (1972), the Court recognized that a parole revocation hearing is not a criminal prosecution and thus "the full panoply of rights due a defendant in such a proceeding does not apply. . . ."  <u>Id.</u> at 2600.  The Court held that the Due Process Clause nevertheless requires certain minimal safeguards to protect the limited liberty interest at stake in a parole revocation hearing.  The Court stated that a parolee is entitled to

(1)  written notice of the alleged parole violations,

(2)  disclosure of the evidence against him,

(3)  an opportunity to be heard personally and to present evidence,

(4)  "<u>the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)</u>,"

(5)  a hearing before a neutral and detached body, and

---

[2]The district court did not consider Barnes's other grounds for relief.  Because Barnes would only be entitled to a new revocation hearing were he successful on those grounds, the district court concluded they were moot since the court had already ordered the state to provide Barnes a new hearing.

-4-

> (6) a written statement by the fact finders describing the evidence reviewed and the reasons for revoking parole.

Id. at 2604 (emphasis added).  After listing these requirements the Court "emphasize[d] [that] there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense" and that the Court had "no thought to create an inflexible structure for parole revocation procedures."  Id.[3]

This court has held that to fall within the good-cause exception to the right of confrontation at a parole revocation hearing the hearing officer must make an explicit, specific finding of good cause and state the reasons for that finding.  See Grandlund, 71 F.3d at 510 n.6; Baker v. Wainwright, 527 F.2d 372, 378 (5th Cir. 1976).  The hearing officer must weigh the parolee's interest in confronting the witness with the government's interest in denying the parolee that right.  Williams v. Johnson, 171 F.3d 300, 304 n.4 (5th Cir. 1999), pet. for cert. filed, No. 99-5046 (U.S. June 28, 1999); United States v. McCormick, 54 F.3d 214, 221 (5th Cir. 1995).  An important consideration in this balancing is the reliability of the challenged testimony.  See Grandlund, 71 F.3d at 510; McCormick, 54 F.3d at 223.

At Barnes's revocation hearing his parole officer asked the hearing officer to exclude Barnes from the hearing room while Odom testified because Odom was a fearful witness.  When Barnes objected

---

[3]The Court stated that the parole revocation process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."  Id.

-5-

the hearing officer sent Barnes out of the room and questioned Odom and her grandmother, with whom Odom lived, to determine if Odom was afraid to testify in Barnes's presence.  After considering their testimony the hearing officer found that Odom was a fearful witness and ordered that Barnes remain outside the room while she testified.  The transcript of the hearing contains the following finding by the hearing officer:

> Okay, counselor, I am prepared to declare Ms. Odom a fearful witness in this matter.  I do not feel she is mentally capable to testify in the capacity with Mr. Barnes present.  I think she is suffering from the Down[s] Syndrome. Several factors involved [sic], . . ., I do believe she falls within the classification of the fearful witness and will make such a finding.  I noted your objection to Mr. Barnes's right to cross examination and confront.  I am going to overrule the objection and I will make a good cause finding for the declaration of fearful witness.[4]

In the formal report of the hearing the hearing officer made the following finding:

> GOOD CAUSE DETERMINATION:  Good Cause was found to GRANT the Fearful Witness status to the Complainant who is suffering from down syndrome [sic], has a mental age of approximately a 6 to 7 year old as testified to by her grandmother who is the legal guardian.  The Complainant indicated that she was scared of the RELEASEE. Complainant's grandmother [sic] that her granddaughter was afraid of the RELEASEE.[5]

In evaluating Barnes's Confrontation Clause claim the district court concluded that it was appropriate to rely by analogy on cases applying the Confrontation Clause to criminal trials.  The court applied the standards announced in <u>Maryland v. Craig</u>, 110 S. Ct.

---

[4]Transcript of November 9, 1995, revocation hearing at page 23.

[5]November 15, 1995, Revocation Hearing Report at page 3-A.

3157 (1990). In Craig the Court held that testimony by an abused child over a one-way, closed-circuit television did not violate the right of a defendant in a criminal trial to confront adverse witnesses. Recognizing that the state's interest in protecting child abuse victims from further embarrassment and trauma is compelling, the Supreme Court concluded that the interest in a child's emotional well-being "may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." Id. at 3167. The Court held that a trial court may employ an alternative to face-to-face confrontation when "necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate. . . ." Id. at 3170.

Applying the Maryland v. Craig standard for criminal trials as the standard for good cause, the district court concluded that the State had not shown good cause for excluding Barnes from the hearing room while Odom testified because the hearing officer had not specifically found that Odom "feared Petitioner to the extent that she would be unable to testify or that such trauma would impair her testimony."[6] Although the hearing officer had found that Odom was afraid of Barnes, the district court concluded that this generalized fear was not sufficient under Maryland v. Craig to constitute good cause.

_____

[6]Order Accepting Recommendation of Magistrate Judge at page 7.

We conclude that the district court erred in requiring the State to satisfy the Maryland v. Craig standard in a parole revocation hearing and in failing to balance the interests of the State and Barnes.

The district court's adherence to Maryland v. Craig went beyond the requirements of Morrissey v. Brewer. Maryland v. Craig sets a higher standard for criminal trials than does Morrissey v. Brewer for revocation hearings. In several decisions we have applied the Morrissey v. Brewer test to determine whether good cause existed to revoke state parole or federal supervised release when the defendant did not have the opportunity to confront witnesses against him.[7] In United States v. McCormick, 54 F.3d at 226, we affirmed a revocation of supervised release even though McCormick was not allowed to cross-examine laboratory technicians or the laboratory's director of toxicology whose urinalysis reports and affidavit were relied upon by the district court in finding that McCormick possessed a controlled substance. We concluded that given the reliability of the reports, as explained in the director's affidavit, and the indicia of reliability of the affidavit itself, the record supported the district court's implicit finding that the difficulty and expense of calling the laboratory technicians and the expense to the government and the disruption to the laboratory in calling the director were good cause for denying McCormick's right to confront and cross-examine

---

[7]In United States v. McCormick, 54 F.3d at 221, we explained that the Morrissey v. Brewer good cause analysis also applies to federal supervised release revocation proceedings.

the technicians and director.  Id. at 221-226.  In United States v. Grandlund, 71 F.3d at 511, we reached a similar result, holding that "[a]voiding the delay, difficulty, and expense of securing the appearance of distant witnesses" was sufficient good cause to deny the defendant at a supervised release revocation hearing the right to confront and cross-examine laboratory personnel who prepared reports of analyses of defendant's urine samples, given the indicia of reliability of the many reports.

On the other hand, in Williams v. Johnson, 171 F.3d at 306, we held that the state's policy of not requiring parole officers to travel outside their districts to attend parole revocation hearings was not sufficient good cause to deny a parolee the right to cross-examine the officer, absent some assessment of the strength of the parolee's competing need to cross-examine the parole officer, and we have held that the mere fact that the complaining witness to a sexual assault charge was out of state at the time of a revocation hearing was not good cause for excusing her from attending a revocation hearing and allowing other witnesses to give hearsay renditions of her testimony.  McBride v. Johnson, 118 F.3d 432, 438-439 (5th Cir. 1997).

Our purpose in citing these decisions is not to attempt to catalogue the universe of reasons that may or may not constitute good cause for dispensing with the right of confrontation at a parole revocation hearing.  Our case law makes clear that this is a flexible requirement, depending in part on the importance of the testimony and the parolee's need to confront the witness.  In Barnes's case, however, the district court, by applying the more

rigorous requirements of <u>Maryland v. Craig</u>, failed to apply the proper standard for determining whether the hearing officer's finding that Odom was a fearful witness satisfied the more relaxed good cause requirement of <u>Morrissey v. Brewer</u>.

Good cause in the context of a parole revocation hearing is determined by balancing the interests of the government and the parolee. See <u>Williams</u>, 171 F.3d at 304 n.4, 306; <u>McCormick</u>, 54 F.3d at 221; <u>Baker</u>, 527 F.2d at 377. Certainly, in a case like this, where Barnes's revocation was based primarily on the disputed testimony of Odom, Barnes had a significant interest in confronting her. At the revocation hearing the hearing officer balanced that interest against the State's interest and concluded that the fear of a mentally retarded complainant of testifying in the presence of the man who allegedly assaulted her outweighed Barnes's interest in being present in the hearing room given the procedures the hearing officer implemented to assure an effective cross-examination of Odom by Barnes's attorney. The district court, by not also considering and balancing those competing interests, failed to follow the requirements of <u>Morrissey v. Brewer</u> and our decisions applying it.

We **REVERSE** the Judgment of the district court, **VACATE** the Writ of Habeas Corpus, and **REMAND** the case to the district court for further proceedings consistent with this Opinion.