IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 13, 2009

Charles R. Fulbruge III
Clerk

No. 06-20914

MICHAEL WILLIAMS

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-1564

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The state of Texas paroled Michael Williams in 2003, after he had served 21 years of a 99 year sentence. A few months later, a woman claiming to be Williams's daughter accused him of assaulting her. Williams asserted an alibi. He claimed the woman, Reba Bailey, wanted his financial help, and that she fabricated the allegations because he refused to support her. Williams was tried and acquitted of assaulting Bailey, but the Texas Board of Pardons and Paroles

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

(the "Parole Board") subsequently revoked his parole based on the same alleged incident. The hearing officer declined to subpoena several of Williams's witnesses, based on a legal theory that the state does not now defend. Williams, reincarcerated, unsuccessfully pursued habeas relief in state court, exhausting his remedies. He then filed a petition for writ of habeas corpus in the district court, challenging the revocation on various substantive and procedural grounds. On cross motions for summary judgment, the district court ruled for the state and dismissed Williams's petition. This court granted Williams a certificate of appealability on three issues. We now hold that the revocation hearing did not comply with the due process requirements of Morrissey v. Brewer, 408 U.S. 471 (1972). We accordingly reverse the decision of the district court, and remand for proceedings consistent with this opinion.

The district court presented a thorough discussion of the facts and applicable law, including the deferential standards that apply when a federal court reviews state court proceedings pursuant to 28 U.S.C. § 2254. The parties agree that Williams's procedural complaints are governed by Morrissey, which sets forth "the minimum requirements of due process" for parole revocation. 408 U.S. at 488. These include, as relevant here, the "opportunity to be heard in person and to present witnesses and documentary evidence." Id. at 489. Williams is not entitled to relief unless we determine that the adjudication of his claims by the Parole Board and Texas courts resulted in a decision that contradicted or "involved an unreasonable application of" Morrissey, or of other Federal law clearly established in the decisions of the Supreme Court. See 28 U.S.C. § 2254(d); see also Lewis v. Quarterman, 541 F.3d 280, 283 (5th Cir. 2008) ("We apply the same § 2254(d) standard of review to the state-court decision as did the district court.")

Williams first argues that the parole revocation violated his rights because he was not allowed to present certain witnesses. According to the findings of the

state district court on habeas review, Williams sought to call seven witnesses. Only two testified. The hearing officer did not subpoena three others,[1] Allen Nugent, Samuel Oakley, and George Henderson, because they were incarcerated and the hearing officer concluded that he "had no control over inmate witnesses being allowed to testify." The state does not defend that position in this appeal. Moreover, we find ample authority in Texas law for the power of parole hearing officers to subpoena witnesses—and none for the proposition that this power does not reach inmates.[2] The state does not argue that these requests presented burdens to the state that would outweigh their value to Williams.[3] Moreover, as discussed infra, the proposed testimony was potentially crucial to the proceeding. Two of the three witnesses were eyewitnesses to Williams's alibi, and the state does not dispute that at least two of the three were incarcerated in the same building where the revocation hearing took place. It accordingly appears that the hearing officer denied Williams his constitutional right to call

---

[1] Williams alleges that the hearing officer also failed to procure a fourth witness on similar grounds, but we find inadequate support in the record to question the state trial court's conclusion that the number of uncalled witnesses was three.

[2] The Texas Government Code provides that a parole panel has the authority to "issue a subpoena requiring the attendance of a witness . . . the panel considers necessary for investigation of the case of a person before the panel." Tex. Gov't Code § 508.048(a). See also Id. § 508.48(c) ("A . . . parole officer, or community supervision and corrections department officer may serve the subpoena in the same manner as similar process in a court of record . . . ."). The Administrative Code provides that "[a] parole panel may issue subpoenas requiring the attendance of witnesses and the production of records, books, papers, and documents as deemed necessary for the investigation of the case of any person before a parole panel or designee of the board." 37 Tex. Admin. Code § 141.101(a). A hearing officer has the authority "to issue on behalf of the board subpoenas, warrants, and other documents authorized by and signed by a board member in accordance with statutory authority[.]" Id. § 147.2(a)(7). Additionally, the Parole Board's website informs inmates that in the revocation process they will have "[t]he right to . . . subpoena witnesses through the parole officer." http://www.tdcj.state.tx.us/bpp/revocation/revocation.html (visited December 23, 2008).

[3] Cf. Earlando Williams v. Johnson, 171 F.3d 300, 307 & n.8 (5th Cir. 1999) (balancing the likely value of proposed testimony with the state's "interest in conserving resources," to determine if the state showed good cause to deny the parolee's request to question a parole officer who testified for the state by affidavit).

witnesses, based on nothing more than a faulty understanding of the Parole Board's powers.[4]

The state argues that the Parole Board effectively complied with Morrissey, because Williams submitted into evidence short letters from Nugent, Oakley, and Henderson, reflecting the testimony they proposed to give. The Court in Morrissey stated that the parole revocation process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 489. Subsequently in Gagnon v. Scarpelli, 411 U.S. 778 (1973), the court explained that "we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence . . . or from developing other creative solutions to practical difficulties of the Morrissey requirements. " 411 U.S. at 782 n.5 (emphasis added). The difficulties at issue in Scarpelli were "serious practical problems" arising from "cases . . . in which a probationer or parolee is allowed to leave the convicting State for supervision in another State," including "the difficulty and expense of procuring witnesses from perhaps thousands of miles away." Id. It would be an unreasonable application of Morrissey and Scarpelli to analogize that situation with Williams's witnesses in the same building.

Furthermore, the state effectively concedes that the letters did not function as genuine "substitutes for live testimony." The state suggests it appears "to the unexpert eye" that the witnesses may not have drafted the

---

[4] The district court concluded that "[t]he state court . . . found that the Hearing Officer 'had no control over inmate witnesses being allowed to testify,'" and considered this "finding" worthy of deference under 28 U.S.C. § 2254(d)(2). This is incorrect. The state court merely found that Williams "was informed by the Hearing Officer that the Hearing Officer had no control over inmate witnesses being allowed to testify" (emphasis added), not that this information was correct under Texas law. In addition, the issue turns on a proposition of Texas administrative law, not fact. Finally, just as the state does not argue that Texas authorities lacked the power to subpoena Williams's witnesses, it does not argue that such a per se exclusion of incarcerated witnesses would comport with Morrissey.

letters themselves, and therefore that the letters do not demonstrate the witnesses would have actually testified consistent with the letters.[5] We agree that the letters merely indicated the testimony Williams expected. For that reason, and because the entire issue here required an assessment of the witnesses' credibility, the letters did not serve as substitutes for live testimony as required by Morrissey.

The state argues, and the district court concluded, that the failure to subpoena Williams's witnesses did not have a "substantial and injurious effect or influence" on Williams's defense, as required for federal habeas relief by Fry v. Pliler, 127 S. Ct. 2321, 2328 (2007). The state argues that the additional witnesses' testimony would have been cumulative, and unpersuasive in any case because incarcerated persons lack credibility. We disagree.

We agree with the state that the additional witnesses may have confirmed some details already in testimony. We do not agree, however, that the testimony would have been useless due to its partial cumulative nature, nor do we agree that testimony from incarcerated individuals is per se incredible. Here such testimony could have been crucial. Apart from a police officer's testimony regarding Williams's clothing, the matter presented a choice between two conflicting stories from witnesses whose credibility might be questioned. Williams contended that he was fishing at a location 30 miles away at the time Bailey contended he was assaulting her. The key testimony came from four witnesses. The two main actors—Williams and Bailey—had serious criminal convictions in their past. Supporting Bailey's story was a relative, her brother, who did not witness the alleged assault but placed Bailey with Williams that night. Supporting Williams's story was his fiancée, who claimed to have been

---

[5] This is an unavailing argument. Lawyers and their staffs routinely assist witnesses in the preparation of affidavits. It would be inappropriate, in this context at least, to hold an incarcerated pro se litigant to a different standard. It is undisputed that the proposed witnesses signed their respective letters.

with Williams at certain points during the day. She had an obvious interest in avoiding his reincarceration. It was in this context that Williams was prevented from calling Oakley and Nugent. They are not relatives, and they are the very men with whom Williams claims he was fishing at the relevant time. Their testimony could very well have tipped the scales for Williams. We accordingly conclude that the due process violations had a substantial and injurious effect on Williams's case, and that the district court erred when it granted summary judgment for the state.

We conclude that on this record, Williams is entitled to a new parole revocation hearing that fully complies with Morrissey. This disposition makes it unnecessary for us to consider Williams's further complaints about the prior proceeding. In particular, we offer no opinion as to the truth or falsity of the allegations against Williams. We REVERSE the judgment of the district court, and REMAND for further proceedings consistent with this opinion.